Johnny W. MOSES and Frances G. MOSES, Plaintiffs–Appellants,

v.

BUSINESS CARD EXPRESS, INC., a Michigan Corporation; Gregory S. Derry, individually and as an agent of the BCE; Dennis Phillips, individually and as an agent of the BCE; American Speedy Printing Centers, Inc., a Michigan corporation; Andrew Petress, Individually and as an agent of both American Speedy Printing Centers and Business Card Express, Defendants–Appellees.

No. 90–1496.

United States Court of Appeals, Sixth Circuit.

Argued Jan. 24, 1991.

Decided April 8, 1991.

Carlos A. Williams (argued), Selma, Ala., for plaintiffs-appellants.

David A. Ettinger, Howard B. Iwrey (argued), Honigman, Miller, Schwartz & Cohn, Detroit, Mich., for defendants-appellees.

Before GUY and BOGGS, Circuit Judges, and LIVELY, Senior Circuit Judge.

LIVELY, Senior Circuit Judge.

This appeal concerns the reviewability and validity of forum selection and choice of law clauses in a franchise agreement. More specifically, the plaintiffs-appellants contend that a district court erroneously transferred the case to another district designated in the contractual forum selection clause. The clause was contained in a contract which the plaintiffs-appellants allege they signed in reliance on the defendants-appellees' fraud, misrepresentation and deceit. In addition, they argue that the transferee court erred in granting summary judgment to the defendants-appellees on the basis of the choice of law clause.

### I.

#### A.

The plaintiffs, Johnny and Frances Moses, husband and wife, are residents of Alabama. Following some preliminary negotiations, the plaintiffs entered into a franchise agreement with the defendant, Business Card Express, Inc. (BCE), a Michigan corporation. The agreement granted the plaintiffs an exclusive 20–year franchise to use BCE's trademarks and "know how" in the operation of an enterprise printing and selling business cards in Alabama. The 24–page agreement detailed the rights and obligations of the parties, and contained the following provisions concerning choice of law and forum:

> This Franchise and License Agreement and the construction thereof shall be governed by the laws of the State of Michigan except that the law of the state where the Franchise Owner is located shall control as to terms of the non-competition provision and, if there is a statute so regulating, of termination and renewal procedures. Both parties acknowledge all litigation must be commenced in the federal district court for the Eastern District of Michigan or the Michigan Circuit Court for the County of Oakland.

There appear to have been disagreements between the plaintiffs and various BCE representatives almost from the beginning of their relationship. Eventually, the plaintiffs notified BCE that they intended to rescind the agreement and demanded compensation for claimed losses. When no satisfactory response was forthcoming the plaintiffs filed this diversity action in the United States District Court for the Northern District of Alabama.

The defendants, in addition to BCE, are identified in the amended complaint as indi-

viduals who are agents of BCE and as a corporation (American Speedy Printing Company) that either owns or has a controlling interest in BCE. According to the complaint, both BCE and American Speedy are Michigan corporations, and the individual defendants, except Gregory S. Derry, are citizens and residents of Michigan. The complaint avers, "upon information and belief," that Derry is a citizen and resident of Canada.

After describing the dealings between the plaintiffs and the defendants, the complaint sets forth counts containing claims for compensatory and punitive damages. Four of the counts allege violations of Alabama statutes establishing causes of action for misrepresentation, deceit and violation of the Alabama Deceptive Trade Practices Act. The remaining count charges a conspiracy to defraud.

An attorney accepted service of a summons, in Michigan, on behalf of all defendants. All defendants then filed a motion to dismiss the action for improper venue under 28 U.S.C. § 1406(a) or, in the alternative, to transfer the case to the United States District Court for the Eastern District of Michigan pursuant either to 28 U.S.C. § 1404(a) or 28 U.S.C. § 1406(a). They filed a copy of the franchise agreement as an exhibit to their motion. The plaintiffs and defendants made a number of submissions, including affidavits, in opposition to and in support of the motion to dismiss or transfer.

### B.

The district court, Judge William M. Acker, Jr., entered an order staying the motion until the United States Court of Appeals for the Eleventh Circuit ruled on a pending petition for mandamus directed to Judge Acker in an unrelated case in which he had denied a request to transfer that case to another jurisdiction.

After the court of appeals granted the petition for a writ of mandamus in the unrelated case, *In re Ricoh Corp.*, 870 F.2d 570 (11th Cir.1989), the district court entered an order on July 10, 1989, directing the clerk to transfer the present case to the

United States District Court for the Eastern District of Michigan. Judge Acker filed a memorandum opinion in which he stated that, in light of the decision of the court of appeals in *Ricoh*, he had no choice but to grant the motion to transfer the present case to Michigan. This conclusion was based upon the court of appeals' treatment of a forum selection clause in the franchise agreement involved in *Ricoh*.

*Ricoh* was also an action by a franchisee against a franchisor that was filed in Judge Acker's court. Although the franchise agreement contained a provision that any action over a dispute arising out of the contract could be brought only in a court located in the New York borough of Manhattan, Judge Acker denied the defendant's motion to transfer the case to a court at that location. In an en banc decision, the court of appeals reversed denial of the motion for transfer. *Stewart Organization, Inc. v. Ricoh Corp.*, 810 F.2d 1066 (11th Cir.1987). Employing somewhat different reasoning, the Supreme Court affirmed the court of appeals and remanded the case "so that the District Court may determine in the first instance the appropriate effect under federal law of the parties' forum-selection clause on respondent's § 1404(a) motion." *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 32, 108 S.Ct. 2239, 2245, 101 L.Ed.2d 22 (1988). Upon remand the district court again denied the motion to transfer, resulting in the mandamus decision previously referred to, 870 F.2d 570.

In his memorandum opinion granting the motion to transfer the present case, Judge Acker stated that he felt the court of appeals in *Ricoh* had misread the Supreme Court and had treated the forum selection clause as placing an "insurmountable burden of proof" on the plaintiffs in this case. *Moses v. Business Card Express, Inc.*, (consolidated with *Stewart v. Dean-Michaels Corp.*) 716 F.Supp. 1400 (N.D.Ala. 1989). Nevertheless, he was bound by the court of appeals' view of the law. The plaintiff filed a motion for reconsideration the next day, July 11, 1989, arguing that *Ricoh* was distinguishable because the

plaintiff in that case did not show fraud, duress or misrepresentation, the very grounds upon which the plaintiffs in this case sought relief.

The district court denied the motion for reconsideration in an order entered the following day, July 12th. Judge Acker concluded that "[o]nce a transfer has occurred, the transferring court no longer has jurisdiction and cannot rule on a post-transfer motion which, if granted, would purport to wrest jurisdiction from the transferee court." The plaintiff did not file a petition for a writ of mandamus but did request the court to certify the issues for an interlocutory appeal pursuant to 28 U.S.C. § 1292(b). The district court did not respond to that request. The clerk of the district court in Alabama forwarded the plaintiffs' motion for reconsideration with supporting papers to the district court in Michigan.

## II.

### A.

The district court in Michigan, Judge George La Plata, first addressed the motion for reconsideration and a motion to retransfer the case to Alabama filed by the plaintiffs in the Michigan court. The court stated that once the files are physically transferred to the transferee court, the transferor court loses jurisdiction over the case. Judge La Plata stated further that neither he nor this court can rescind the transfer order. Thus, Judge La Plata denied the motion for reconsideration. The judge determined that he had the power to consider the motion to retransfer, but "where it is no more than an indirect review of whether the decision to transfer the case was an abuse of discretion, the law-of-the-case doctrine should prevent the transferee court from redeciding the issue."

After reviewing applicable cases, Judge La Plata concluded that Judge Acker's decision to grant the motion to transfer the present case was "not a clearly erroneous application of *Ricoh*." Giving deference to Judge Acker's decision as the law of the case, Judge La Plata declined to review the decision to transfer for abuse of discretion. Nevertheless, Judge La Plata considered the issues raised in the plaintiffs' motion for reconsideration in view of the fact that Judge Acker's opinion did not deal with them.[1] The court did not agree that the issues raised in the plaintiffs' motion required a retransfer of the case. Pertinent to our review, the court found that the forum selection clause in the franchise agreement was not rendered "a nullity" by the deceit, fraud and misrepresentation alleged to have been practiced by BCE. Judge La Plata concluded that even if the plaintiffs were induced to enter into the agreement by fraud, deceit and misrepresentation, this would not affect the validity of the forum selection clause. The plaintiffs did not claim that the inclusion of that clause in the contract was the product of a fraud.

### B.

Following the district court's refusal to retransfer the case, the defendants made a motion for summary judgment. The parties had engaged in discovery while the case was stayed pending the Eleventh Circuit decision in *Ricoh*. On the basis of the entire record and briefs of the parties, the district court granted summary judgment in favor of the defendants and dismissed the action. The court held that the counts in the complaint based on alleged violations of Alabama statutes should be dismissed because the choice of law provisions of the franchise agreement required the validity, interpretation and obligations of the contract to be governed by the law of Michigan. As to the remaining count, the court

---

1. Inasmuch as Judge Acker had declined on jurisdictional grounds to consider arguments made by the plaintiffs for the first time in their motion for reconsideration, Judge LaPlata responded to those arguments as well as to those made in the first instance. This eliminates any concern that might have arisen over whether the plaintiffs were denied consideration of *all* their arguments in opposition to the transfer due to the rapidity of the physical transfer of the file to Michigan.

found that the defendants were legally incapable of committing a civil conspiracy because all of the defendants are a single entity in law. "[T]he defendants are a parent and subsidiary corporation, and three individuals who are allegedly agents of one or both of the corporations."

The plaintiffs appealed and the parties have argued the transfer issue as well as the summary judgment. The plaintiffs have abandoned their reliance on a claim of conspiracy and have argued only the counts based on violations of Alabama statutes. Thus, they have put squarely in issue the enforceability of the choice of law clause in the agreement.

### III.

■ The only issues before us are those decided by the United States District Court for the Eastern District of Michigan. We have no appellate jurisdiction over decisions of district courts outside the Sixth Circuit. 28 U.S.C. § 1294; *Lewelling v. Farmers Ins. Co. of Columbus, Inc.*, 879 F.2d 212, 218 (6th Cir.1989). Because Judge La Plata denied the plaintiffs' motion to retransfer this case to the Northern District of Alabama, however, we have jurisdiction to review that decision as well as the summary judgment and, thus, to review indirectly the decision of Judge Acker.

### A.

■ Our analysis begins with an evaluation of the transfer issue, but we must recognize from the outset that the resolution of this issue should not be outcome determinative because of the presence of the choice of law clause. That clause states that the agreement itself as well as its construction "shall be governed by the laws of the State of Michigan." In a diversity action such as this, the courts of Alabama and Michigan, applying Michigan law under the governing law clause, should reach identical results on the substantive issues involved in the case. Cf. *Guaranty*

*Trust Co. v. York*, 326 U.S. 99, 100, 65 S.Ct. 1464, 1465, 89 L.Ed. 2079 (1945); *Stewart Organization, Inc. v. Ricoh*, supra, 810 F.2d at 1070. Because the forum selection clause and its enforceability under 28 U.S.C. § 1404(a) address primarily procedural questions, their resolution will not affect the ultimate outcome of the substantive decisions in this case. Therefore, as we discuss below, in reviewing the transfer decision under § 1404(a) [2] we are concerned only with such questions as whether consideration of convenience to parties and witnesses and other burdens associated with proceeding in the agreed jurisdiction render enforcement unreasonable under the circumstances.

■ Although forum selection clauses were once disfavored by the courts, that is no longer the case. At least since the Supreme Court's decision in *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972), such clauses are "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *Id.* at 10, 92 S.Ct. at 1913 (footnote omitted). Since its decision in *The Bremen*, the Supreme Court has provided further guidance on the enforcement of a contractually pre-selected forum where one party is attempting to enforce that choice through a motion to transfer under 28 U.S.C. § 1404(a). In *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988), the Court held that when a district court is considering a motion to transfer based upon a forum selection clause, the clause "should receive neither dispositive consideration ... nor no consideration ... but rather the consideration for which Congress provided in § 1404(a)." *Id.* at 31, 108 S.Ct. at 2245. The Supreme Court pointed out that in addition to the forum selection clause, which is "a significant factor that [should figure] centrally in the District Court's calculus," the lower court should

---

**2.** § 1404(a) provides:

§ 1404. **Change of Venue**

(a) For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

consider a number of other case-specific factors. *Id.* at 29, 108 S.Ct. at 2244. These factors are derived from the explicit wording of the statute, and can be distinguished on the basis of the interests which they affect. Therefore, in ruling on a motion to transfer under § 1404(a), a district court should consider the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public-interest concerns, such as systemic integrity and fairness, which come under the rubric of "interests of justice." *Id.* at 30, 108 S.Ct. at 2244.

■■■ Because this case involves the successive rulings by coordinate courts in the same case, our analysis is further guided by the doctrine of the law of the case. This doctrine states that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California,* 460 U.S. 605, 618, 103 S.Ct. 1382, 1391, 75 L.Ed.2d 318 (1983). Because of the possibility of forcing a transferred case into perpetual litigation by playing "jurisdictional ping-pong," the law of the case doctrine applies "with even greater force to transfer decisions than to decisions of substantive law." *Christianson v. Colt,* 486 U.S. 800, 816, 108 S.Ct. 2166, 2178, 100 L.Ed.2d 811 (1988). Nevertheless, the law of the case doctrine is a rule of judicial comity rather than one of jurisdictional limitation:

> A court has the power to revisit prior decisions of its own or of a coordinate court in any circumstance, although as a rule courts should be loathe do do so in the absence of extraordinary circumstances such as where the initial decision was "clearly erroneous and would work a manifest injustice." *Arizona v. California, supra,* 460 U.S., at 618, n. 8, 103 S.Ct., at 1391, n. 8 (citation omitted).

*Christianson v. Colt, supra,* 486 U.S. at 817, 108 S.Ct. at 2178. In clarifying the circumstances under which a judge rightfully departs from the law of the case, Judge Friendly wrote in *Fogel v. Chestnutt,* 668 F.2d 100 (2d Cir.1981), *cert. denied,* 459 U.S. 828, 103 S.Ct. 65, 74 L.Ed.2d 66 (1982), "The law of the case will be disregarded only when the court has 'a clear conviction of error' with respect to a point of law on which its previous decision was predicated." *Id.* 668 F.2d at 109. Consequently, law of the case does not limit a court's power to make an independent decision; rather it "directs a court's discretion." *Arizona v. California, supra,* 460 U.S. at 618, 103 S.Ct. at 1391; accord *Skil Corp. v. Millers Falls Co.,* 541 F.2d 554, 558–59 (6th Cir.), *cert. denied,* 429 U.S. 1029, 97 S.Ct. 653, 50 L.Ed.2d 631 (1976). Given this framework, we must decide whether Judge La Plata, in adopting Judge Acker's transfer decision as the law of the case, abused his discretion.

### B.

■■ The plaintiffs argued to Judge La Plata in their motion for retransfer that Judge Acker's transfer order should not be adhered to as law of the case based on four exceptions to the law of the case doctrine. We conclude that they produced colorable arguments only in support of their claim of clear error and manifest injustice, and therefore we need not address whether circumstances apart from clear error necessarily furnish grounds for a judge's departure from the law of the case. The plaintiffs asserted clear error in Judge Acker's failure to consider each transfer factor identified by the Supreme Court in *Stewart Organization,* which, in effect, is an argument that Judge Acker failed to exercise his discretion. Although Judge Acker did not make as thorough an analysis as might be indicated by *Stewart Organization,* he did respond to the arguments initially relied upon by the plaintiffs. Of course he was acting in light of his court of appeals' mandamus decision in *Ricoh* and felt compelled to give strong deference to the forum selection clause in the agreement between the plaintiffs and BCE. In reviewing Judge Acker's decision, Judge La Plata examined the record and pertinent authorities and determined that Judge Acker had not committed clear error in construing the Supreme Court's mandate in *Stewart Organization* and that the transfer decision did not cause manifest injustice. Conse-

quently, although Judge Acker's exercise of his discretion under § 1404(a) was perhaps overly circumscribed, Judge La Plata correctly adhered to the law of the case in concluding that the decision to transfer was not clearly erroneous.

■ Judge La Plata then turned to the new arguments raised by the plaintiffs in their motions for reconsideration and for retransfer. After examining the record, he found none of these arguments persuasive. He dealt at some length with the most serious of these arguments—that the forum selection clause was "nullified" by the plaintiffs' claims of fraud, deceit and misrepresentation. In rejecting this contention, the court followed settled law that unless there is a showing that the alleged fraud or misrepresentation induced the party opposing a forum selection clause *to agree to inclusion of that clause* in the contract, a general claim of fraud or misrepresentation as to the entire contract does not affect the validity of the forum selection clause. See *Scherk v. Alberto–Culver Co.*, 417 U.S. 506, 519 n. 14, 94 S.Ct. 2449, 2457 n. 14, 41 L.Ed.2d 270 (1974) (The Supreme Court in *The Bremen v. Zapata* did not hold that any time a dispute arising out of a transaction is based on fraud that the forum selection clause in an agreement is unenforceable. "Rather, it means that an arbitration or forum-selection clause in a contract is not enforceable if the *inclusion of that clause in the contract* was the product of fraud or coercion.") (italics in original).

As this court has stated, there must be a well-founded claim of fraud in the inducement of the clause itself, *standing apart from the whole agreement,* to render an arbitration clause unenforceable. *Arnold v. Arnold Corp.*, 920 F.2d 1269, 1278 (6th Cir.1990). Both *Scherk* and *Arnold* dealt with arbitration clauses, which are a particular type of forum selection clause. Both opinions applied the rule to arbitration clauses and general forum selection clauses alike. When pled generally, claims of fraud, deceit and misrepresentation do not relate to a forum selection clause. Therefore, Judge La Plata correctly rejected the plaintiffs' argument that their general allegations of fraud, deceit and misrepresentation nullified the forum selection clause.

#### C.

■ The plaintiffs' arguments that Judge Acker should have declined to transfer the case to prevent manifest injustice are not persuasive.

Almost inevitably there is some disparity of economic power between franchisor and franchisee. Nevertheless, this record does not contain the picture of totally unsophisticated and inexperienced persons accepting every condition imposed by a franchisor. Johnny Moses had both undergraduate and graduate degrees, and studied economics at both levels. In addition, his employer had sent him to a workshop in advanced management skills. Frances Moses was also a college graduate and a former school teacher with experience in the real estate business.

The plaintiffs filed a financial statement with Mr. Moses's deposition dated June 7, 1988, which showed that they owned securities and investment real estate in addition to their home and tangible personal property. The plaintiffs had "looked at" other franchises before deciding on BCE as an investment. They talked with an advisor and investigated both Holiday Inn and Kentucky Fried Chicken franchises before settling on BCE. Most telling, however, is the fact that BCE did not present them with a franchise agreement on a "take-it-or-leave-it" basis. It is clear from both plaintiffs' depositions that they negotiated various items with the defendant Petress, and prevailed in seeking changes in the franchise agreement first presented to them.

With respect to the claim of financial hardship, the record discloses that the plaintiffs' attorney took their case on a contingent fee basis after the payment of an initial retainer. Mr. Moses was unable to estimate how much more it would cost to try the case in Michigan than in Alabama. There is no reason why the testimony of witnesses could not be presented by deposition. Of course, the plaintiffs rather than the defendants would be required to bear

the expense of travel. This is inherent in a forum selection clause. Unless all parties reside in the selected jurisdiction, any litigation will be more expensive for some than for others. This is not a reason for declaring such clauses invalid.

This record lacks the elements required to create a "clear conviction of error" in Judge Acker's application of the law of the case and decision to transfer the case pursuant to § 1404(a). *Fogel v. Chestnutt,* supra. Judge La Plata did not commit reversible error in denying the motion to retransfer.

## IV.

█ In granting summary judgment for the defendants, the district court held that the choice of law clause controls. We agree. Both Alabama and Michigan conflict of law rules recognize the enforceability of choice of law provisions in their courts if otherwise valid and not contrary to the public policy of the forum state. *Craig v. Bemis Co., Inc.,* 517 F.2d 677, 680 (5th Cir.1975) (Alabama law); *New England Mut. Life Ins. Co. v. Gray,* 786 F.2d 406, 411 (6th Cir.1986) (Michigan law). Michigan clearly has sufficient contacts with the franchise agreement for Michigan law to be applied in accordance with the parties' agreement. The only question, then, is whether it offends the public policy of Alabama for this case to be decided by the application of Michigan substantive law.

Alabama courts have stated that the test is "whether the public interest is injuriously affected in such substantial manner that private rights and interests should yield to those of the public." *Colston v. Gulf States Paper Corp.,* 291 Ala. 423, 282 So.2d 251, 255 (1973) (citation omitted). The courts move cautiously when asked to hold contract clauses unenforceable on public policy grounds; this should occur only in cases where there is "a dominating public interest." *Lowery v. Zorn,* 243 Ala. 285, 9 So.2d 872, 874 (1942).

We can find no such dominating public interest of Alabama that would be contravened by permitting the dispute in this case to be resolved under the law of Michigan.

The plaintiffs argue that Alabama law permits the recovery of punitive damages for fraud or misrepresentation whereas the law of Michigan does not. This was the state of the law when the plaintiffs entered into the contract, and yet they agreed that Michigan law should control any disputes. They cite no case in which it has been held that a state's dominating public interest is violated by requiring its citizens and residents to try a lawsuit in another jurisdiction with a different rule on punitive damages where the parties have agreed that the other state's substantive law is controlling.

█ The plaintiffs repeat their arguments made with reference to the forum selection clause—that the alleged fraud vitiates the choice of law clause. We believe the answer is the same in both instances. The complaint makes only general allegations concerning fraud in the inducement, and none is specifically related to the choice of law clause. Johnny Moses admitted that he read and was aware of the clause. As the defendants point out, the plaintiffs produced no authority in support of their claim that such a general claim, without more, can lead to a holding that a choice of law clause is unenforceable. Comment c to the *Restatement (Second) Conflict of Laws* § 201 (1971) states that enforcement of a choice of law provision will be denied, in the face of a claim that a contract was entered into by reason of misrepresentation, undue influence or mistake, "only if the misrepresentation, undue influence or mistake was responsible for the complainant's adherence to the provision." This statement is reflected in the cases previously discussed with respect to the forum selection clause.

█ Finally, the plaintiffs assert that the choice of law clause applies only to construction of the contract itself and not to their claims of fraud and misrepresentation. The pertinent language is, "This Franchise and License Agreement and the construction thereof shall be governed by the laws of the state of Michigan...." Clearly, the clause refers to more than

construction of the agreement; otherwise the first six words would be surplusage. If the clause provided merely that its construction would be governed by the law of Michigan, the plaintiffs would have support for their argument that it does not apply more generally. In *Caton v. Leach Corp.*, 896 F.2d 939 (5th Cir.1990), the choice of law clause provided that "[t]his agreement shall be construed under the laws of the State of California." The court held that "[t]he parties' narrow choice of law clause does not address the entirety of the parties' relationship," and thus did not apply to the plaintiff's tort claims. *Id.* at 943. The court contrasted the narrow clause in that case with an example of broader language, "govern, construe and enforce all of the rights and duties of the parties arising from or relating in any way to the subject matter of this contract." This language would cover more than pure contract claims. *Id.* n. 3. The language in the present case falls between these extremes.

The plaintiffs are not asserting a noncontractual claim or one that arose incidentally out of the contractual relationship. Rather, they are seeking to avoid enforcement of the contract itself. They put the validity of the contract in issue, and such a claim would appear to be encompassed by the language, "This Franchise and License Agreement ... shall be governed by the laws of the State of Michigan." In the absence of any showing to the contrary, we find no error in the district court's determination that the law of Michigan governed this case. To the extent the plaintiffs based their claims directly on the alleged violations of specified Alabama statutes, without reference to the law of Michigan, they failed to assert a claim upon which relief could be granted. The defendants were entitled to judgment on those claims as a matter of law. The plaintiffs originally asserted a common law conspiracy claim, which the district court denied. The plaintiffs have abandoned this claim on appeal.

## CONCLUSION

After reviewing each ruling by the Michigan district court, we find no clear error of law or abuse of discretion in denial of the plaintiffs' motion to retransfer the case to the Alabama court or in entry of summary judgment for the defendants.

The judgment of the district court is affirmed.