**DETROIT COKE CORPORATION,**
**Plaintiff,**

**v.**

**NKK CHEMICAL USA, INC., and**
**National Steel Corporation,**
**Defendants.**

**No. 91–CV–75220–DT.**

United States District Court,
E.D. Michigan, S.D.

May 18, 1992.

Richard A. Rossman, Detroit, Mich., John T. Gazzoli, Jr., St. Louis, Mo., for plaintiff.

Douglas H. West, Detroit, Mich., Paul H. Titus, Pittsburgh, Pa., for NKK Chemical.

William B. Wycoff of Pittsburgh, Pa., for Nat. Steel.

OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS TO TRANSFER VENUE AND TRANSFERRING THIS ACTION TO THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA IN PITTSBURGH

GERALD E. ROSEN, District Judge.

## I. INTRODUCTION

This breach of contract/breach of warranties action is presently before the Court on two of the Defendants' separately filed motions—the "Motion to Dismiss for Improper Venue, or in the Alternative, to Transfer" filed by Defendant NKK Chemical USA, Inc. ("NKK"), and the similar "Motion to Transfer Venue", filed by Defendant National Steel Corporation ("National"). Plaintiff has filed a "Consolidated Response" to these two Motions and, as indicated to counsel for the parties at the March 20, 1992 Scheduling/Status Conference held on this case, the Court finds oral argument on the Motions to be unnecessary. Therefore, pursuant to Eastern District of Michigan Local Rule 7.1(e)(2), the Court will decide the Motions to Dismiss or Transfer Venue "on the briefs". This Opinion and Order sets forth the Court's ruling on these Motions.

## II. PERTINENT FACTUAL BACKGROUND

According to the factual allegations in Plaintiff's Complaint, in 1989, Defendant NKK desired to enter into an agreement with Plaintiff Detroit Coke Corporation under which Detroit Coke would manufacture blast furnace coke for use by NKK's corporate affiliate, Defendant National Steel Corporation, in its manufacture of steel. [Complaint, para. 11.] National Steel had its own coking facilities, but could not produce enough coke for its steel manufacturing requirements. [Complaint para. 12.] Thus, on or about July 7, 1989, NKK, acting on its own behalf and as broker or agent for National Steel, negotiated and entered into a "Coke Purchase Agreement" with Detroit Coke. [Complaint, para. 13.] It is this "Coke Purchase Agreement" that gives rise to the instant lawsuit.

Under the terms of the Agreement, Detroit Coke was required to first exhaust its on-site coal supply for the manufacture of blast furnace coke for Defendants. Thereafter, under the Agreement, Defendants required Detroit Coke to purchase coal from them to manufacture the coke. [Complaint, para. 22.] This requirement was made part of the Agreement to ensure uniformity of the product manufactured by Detroit Coke for Defendants and the coke made by National in its own coking facility. [Id.] To further ensure that both Detroit Coke's and National's coke product were of a like kind and quality, Defendants required that Detroit Coke and National blend the coal in percentages and specifications selected and provided by Defendants. [Complaint, para, 23.] Defendants warranted in the Agreement, and orally, that the required coal would provide a coal blend free of defects and of a certain uniform quality and analysis for Detroit Coke's use in manufacturing coke. [Id.]

After execution of the Agreement, Detroit Coke converted and dedicated its facility solely to the manufacture of Defendants' blast furnace coke, and began production of coke pursuant to the Agreement shortly thereafter. [Complaint, para. 24.] Apparently, production went well and ac-

cording to schedule and Agreement quantity requirements during the initial five or six months of production while Detroit Coke was exhausting its on-site supply of coal inventory. [*Id.*]

However, beginning in January 1990, after Detroit Coke had exhausted its on-site coal supply and began using solely the required coal blend from the coals sold to it by Defendants, Detroit Coke began experiencing serious production problems in its blast furnace coke ovens known as "oven stickers". [Complaint, para. 25–26.] In the coke manufacturing industry, "oven stickers" occur when imperfections or defects in coal cause the coke produced to stick in and to the ovens, potentially resulting in serious oven damage. [Complaint, para. 26.] The high level of "oven stickers" experienced by Detroit Coke severely damaged and rendered inoperable many of Detroit Coke's 70 coke ovens. [Complaint para. 27, 32.][1] Detroit Coke subsequently discovered that the coal it had been required to purchase from Defendants under the Agreement was substandard and not in compliance with the quality warranted by Defendants in the Agreement. [Complaint, para. 28.]

Detroit Coke alleges that the substandard coal it was required to purchase from Defendants under the Agreement was the proximate cause of more than six million dollars damage to its ovens. Plaintiff also claims that, in addition to the $6 million it had to expend to repair its ovens, the oven damage resulted in a severe drop in Detroit Coke's coke production, causing a significant loss of profits it would have earned from the coke produced for Defendants had production been able to continue normally as anticipated under the Agreement. [Complaint, para. 32–33.]

Plaintiff further alleges that the "oven stickers" damage to its ovens caused its plant's heat stack to emit air pollutants in violation of air emission laws and regulations, which, after legal environmental action was taken against Detroit Coke for EPA violations, resulted in the imposition of severe fines, and required Detroit Coke to commit to expend over two million dollars to construct a new pollution control device. [Complaint, para. 35–36.]

Ultimately, because of the substantial damage to its ovens, the high cost of oven repairs, the fines and the expenditures for the new pollution control device, and the reduced production of coke, Detroit Coke was forced to cease operations, to layoff its workers and close its facility. [Complaint para. 38.] This lawsuit was thereafter commenced.

In its Complaint, Detroit Coke has asserted six counts against Defendants NKK and National Steel—Counts I, II and III are claims of express and implied warranties; Count IV is a claim of breach of contract; Count V is a claim of breach of duty of good faith and fair dealing; and Count VI is a claim of breach of fiduciary duties. Plaintiff has attached to its Complaint a copy of the Coke Purchase Agreement.

Defendants contend that venue is not proper in this Court and, therefore, have moved for dismissal or transfer of this action to the Western District of Pennsylvania.

### III. PERTINENT PROVISIONS OF THE COKE PURCHASE AGREEMENT

With respect to the instant Motions regarding the propriety of venue in this Court, Section 8.8 of the Agreement is of particular importance. Section 8.8 is a choice of law/choice of forum provision which states as follows:

Section 8.8. *Applicable Law.* This Agreement shall be governed and construed in accordance with the laws of the Commonwealth of Pennsylvania without regard to its conflicts of law provisions, and the rights and remedies of the parties hereunder shall be determined in accordance with such laws. *Any action or proceeding under or pursuant to this agreement shall be brought only in ei-*

---

**1.** Plaintiff further alleges that Defendant National also had experienced "oven sticker" problems at its own coke production facility but never disclosed its problems to Plaintiff. [Complaint para. 31.]

*ther the Allegheny County, Pennsylvania Court of Common Pleas or the United States District Court for the Western District of Pennsylvania.*

[Agreement, p. 16, Complaint Ex. 1 (emphasis added).] [2]

## IV. LEGAL ANALYSIS

Relying principally upon the forum selection provisions of Section 8.8 of the Agreement, Defendants move to dismiss or, in the alternative, to transfer this action to the U.S. District Court for the Western District of Pennsylvania, pursuant to 28 U.S.C. §§ 1404(a) and 1406(a). These statutory provisions state as follows:

**§ 1404. Change of venue.**

**(a)** For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

28 U.S.C. § 1404(a).

**§ 1406. Cure or waiver of defects.**

**(a)** The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

28 U.S.C. § 1406(a).

■ Although forum selection clauses were once disfavored by the courts, that is no longer the case. At least since the Supreme Court's 1972 decision in *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972), such clauses are now deemed to be *"prima facie valid"* and are to be enforced "unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *Moses v. Business Card Express, Inc.*, 929 F.2d 1131, 1136 (6th Cir. 1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 81, 116 L.Ed.2d 54 (1991). Reasonableness under the circumstances requires an examination of considerations of convenience to a parties and witnesses and other burdens associated with proceeding in the agreed jurisdiction. *Id.*[3]

In two recent cases—*Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988), and *Carnival Cruise Lines, Inc. v. Shute*, —— U.S. ——, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991)—the Supreme Court delineated the standards applicable to a federal court's consideration of an improper venue motion when the moving party is seeking to enforce the provisions of a forum selection clause.

In *Stewart*, the earlier of these two cases, an Alabama corporation entered into an agreement with the defendant, a nationwide manufacturer with its principal place of business in New Jersey, close to the New York border. The agreement contained a forum selection clause that provid-

---

**2.** The Coke Purchase Agreement was signed only by officers of Plaintiff Detroit Coke and Defendant NKK. Although Defendant National Steel was not a signatory to the Agreement, the Court notes that National's material involvement in the transactions at issue in this suit as alleged in Plaintiff's Complaint is expressly referenced throughout the Agreement.

The introductory recitals in the Agreement explicitly state that the purpose of the Agreement is to secure a reliable source of coke for National Steel. Furthermore, National's active participation is reflected in the terms of the Agreement. For example, the Agreement requires that National be copied on all testing and billing information. [Agreement, § 4.3.2 at p. 11; § 6.1 at p. 13]. The Agreement also provides that National was to discuss and agree with Detroit Coke and NKK on methods for meeting environmental regulatory requirements. [§ 3.1.] Under the terms of the Agreement, National's steel production would govern the amount of coke purchased from Detroit Coke. [§ 4.1.4.] National was given the right under the terms of the Agreement to monitor and inspect sampling and analytical procedures employed by Detroit Coke. §§ 4.3.1–4.3.2]. See also, §§ 4.3.6 "Sale of Coke Oven Gas to National"; 8.11 "Production Coordination–Management Meetings"; and Article III of Amendment I to the Coke Purchase Agreement.]

Thus, to the extent that Plaintiff's argument is that the forum selection provisions of Section 8.8 should be disregarded merely because one of the Defendants—Defendant National Steel—was not a "party" to the Agreement, the Court finds no merit in that argument.

**3.** Federal law, not state law, governs the determination of whether the parties' forum selection clause should be enforced. *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 28–29, 108 S.Ct. 2239, 2243–2244, 101 L.Ed.2d 22 (1988).

ed that any dispute arising under the contract would be brought only in a state or federal district court located in the Borough of Manhattan, New York City. The Alabama corporation filed a breach of contract suit in federal district court in Alabama.

Relying on the forum selection clause, the defendant moved to dismiss for improper venue or to transfer the action to the federal court in Manhattan pursuant to 28 U.S.C. § 1404(a). The Alabama district court denied the motion. On interlocutory appeal, the court of appeals reversed with instructions to transfer the case to the federal judicial district located in Manhattan. The Supreme Court affirmed the appellate court's ruling, explaining:

Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness. A motion to transfer under § 1404(a) thus calls on the district court to weigh in the balance a number of case-specific factors. *The presence of a forum-selection clause such as the parties entered into in this case will be a significant factor that figures centrally in the district court's calculus.*

108 S.Ct. at 2244 (citations omitted and emphasis added).

The *Stewart* court cautioned, however, that the mere existence of the forum selection clause was not to be deemed in and of itself dispositive of the defendant's § 1404(a) motion. Rather, the court instructed that the district court was to consider in its resolution of the § 1404(a) motion on remand "such issues as the convenience of a Manhattan forum given the parties' expressed preference for that venue, and the fairness of transfer in light of the forum-selection clause, and the parties' relative bargaining power." *Id.*

In *Carnival Cruise Lines*, the Supreme Court expanded the impact of forum selection clauses on improper venue or forum *non conveniens* motions. In that case, the court held that a forum selection clause, printed in small type in a "form contract"

on the back of a cruise passage ticket was valid *even though there had been no bargaining between the parties for the clause*, and that the lower court had erred in refusing to give it effect when the defendant cruise line moved for dismissal on the grounds of improper venue. The court explained its policy rationale for favoring enforcement of such non-bargained-for forum selection clauses:

[A] clause establishing *ex ante* the forum for dispute resolution has the salutory effect of dispelling any confusion about where suits arising from the contract must be brought and defended, sparing litigants the time and expense of pretrial motions to determine the correct forum, and conserving judicial resources that otherwise would be devoted to deciding those motions.

111 S.Ct. at 1527. *See also, Stewart Organization, Inc. v. Ricoh Corp., supra:*

The federal judicial system has a strong interest in the correct resolution of these questions, not only to spare litigants unnecessary costs but also to relieve courts of time-consuming pretrial motions. *Courts should announce and encourage rules that support private parties who negotiate such clauses....* *[T]he authority and prerogative of the federal courts to determine the issue [of propriety of venue], as Congress has directed by § 1404(a), should be exercised so that a valid forum-selection clause is given controlling weight in all but the most exceptional cases.*

487 U.S. at 33, 108 S.Ct. at 2246 (Kennedy, J. concurring).

In a post-*Stewart*/pre-*Carnival Cruise Lines* case, the Sixth Circuit summarized the standards to guide district courts when considering a motion to transfer venue based upon a forum selection clause:

[W]hen a district court is considering a motion to transfer based upon a forum selection clause, the clause should receive neither dispositive consideration nor no consideration, but rather the consideration for which Congress provided in § 1404(a). The Supreme Court pointed out that in addition to the forum selec-

tion clause, which is a significant factor that should figure centrally in the District Court's calculus, the lower court should consider a number of other case-specific factors. These factors are derived from the explicit wording of the statute, and can be distinguished on the basis of the interests which they affect. Therefore, in ruling on a motion to transfer under § 1404(a), a district court should consider the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public interest concerns, such a systemic integrity and fairness which comes under the "interests of justice."

*Moses v. Business Card Express, Inc., supra*, 929 F.2d 1131, 1136–1137 (citations omitted).

■ Applying the foregoing *Stewart/Carnival Cruise Lines/Moses* standards to this case, the bargained-for[4] forum selection clause in the Coke Purchase Agreement limiting the judicial forums for actions arising under or pursuant to the Agreement to the Allegheny County, Pennsylvania Court of Common Pleas and the U.S. District Court for the Western District of Pennsylvania is to be given significant weight.

Examining the other convenience/interest of justice factors, the Court finds that, with respect to the convenience of the parties and witnesses, it would be equally inconvenient for Plaintiff to try its action in Pittsburgh (the situs of the U.S. District Court for the Western District of Pennsylvania) as it is for Defendants to defend the action in this Court. Therefore, the Court finds that this factor does not tip in either Plaintiff's or Defendants' favor.

With respect to the public interest "interest of justice" concerns, however, when coupled with the significant weight to be attributed to the forum selection clause, the Court believes that the scales tip in favor of Defendants. The express terms of Section 8.8 of the Agreement provide that the rights and remedies of the parties under the Agreement are to be governed by the laws of the Commonwealth of Pennsylvania. It is axiomatic that the construction of state law is best given to a court most familiar with it. *See, Heller Financial, Inc. v. Midwhey Powder Co., Inc.,* 883 F.2d 1286, 1293 (7th Cir.1989); *Mutual of Omaha Ins. Co. v. Dolby,* 531 F.Supp. 511, 516 (E.D.Pa.1982); *Kreisner v. Hilton Hotel Corp.,* 468 F.Supp. 176, 179 (E.D.N.Y. 1979). Thus, the interests of justice tip in favor of the previously agreed upon Pennsylvania forum. Moreover, there is already pending a related case between Defendant NKK and Plaintiff (and a third party) in the Allegheny County Court of Common Pleas. It seems to this Court that it would be in the interest of justice (and of convenience to the parties) to proceed with related actions in the same city.

Because the interests of justice weigh in favor of the Pennsylvania forum provided in the forum selection clause and because the Supreme Court has instructed that the parties' bargained-for forum selection clause is to be given "significant" weight, the Court finds that the scales in this case tip in favor of enforcement of the forum selection clause and transfer of this action to the United States District Court for the Western District of Pennsylvania in Pittsburgh.

Plaintiff's principal argument against transfer (other than its inconvenience arguments which as indicated above the Court finds to be equal to the inconvenience arguments raised by Defendants) is its contention that because Detroit Coke chose to file this lawsuit in the Eastern District of Michigan rather than in Pennsylvania, its choice should be given "great weight." Detroit Coke is mistaken. Detroit Coke made its "choice" of forum when it signed the Agreement which contained the forum selection clause.

---

4. That considerable negotiation and bargaining went into the adoption of the forum selection clause here is established by the Affidavit of Shohei Odachi, the Executive Vice-President and General Manager of NKK who represented NKK in the negotiations with Detroit Coke regarding the Coke Purchase Agreement.

As the Eleventh Circuit explained in *In re Ricoh*, 870 F.2d 570 (11th Cir.1989):

> The federal courts traditionally have accorded a plaintiff's choice of forum considerable deference. Thus, in the usual motion for transfer under section 1404(a), the burden is on the movant to establish that the suggested forum is more convenient. When, however, the parties have entered into a contract containing a valid, reasonable choice of forum provision, the burden of persuasion is altered.
>
> In attempting to enforce the contractual venue, the movant is no longer attempting to limit the plaintiff's right to choose its forum; rather, the movant is trying to enforce the forum that the plaintiff had already chosen: the contractual venue. In such cases, we see no reason why a court should accord deference to the forum in which the plaintiff filed its action. Such deference to the filing forum would only encourage parties to violate their contractual obligations, the integrity of which are vital to our judicial system.... We [therefore] conclude that when a motion under section 1404(a) seeks to enforce a valid, reasonable choice of forum clause, the opponent bears the burden of persuading the court that the contractual forum is sufficiently inconvenient to justify retention of the dispute.

*Id.* at 573 (citations omitted).

This Court agrees with the reasoning of the Eleventh Circuit on the "deferring to plaintiff's choice of forum" issue.

Plaintiff also attempts to make out a "financial hardship" argument against transfer. However, the Sixth Circuit explicitly held that a claim of financial hardship cannot be used to invalidate a bargained-for forum selection clause in *Moses v. Business Card Express, Inc., supra:*

> With respect to the claim of financial hardship ... [o]f course, the plaintiffs rather than the defendants would be required to bear the expense of travel. This is inherent in a forum selection clause. Unless all parties reside in the selected jurisdiction, any litigation will be more expensive for some than for others. This is not a reason for declaring such clauses invalid.

929 F.2d at 1138–1139.[5]

Simply stated, the Court does not find that Plaintiff has met his "heavy burden of proof", *Carnival Cruise Lines v. Shute, supra* 111 S.Ct. at 1528, to establish a sufficiently "serious inconvenience of the [agreed-upon] contractual forum" substantially outweighing any inconvenience of Defendants to defend this action here in Michigan to render the forum selection clause invalid so as to require this Court to set aside the clause to allow Plaintiff to proceed with its action in this Court.

For all of the foregoing reasons, the Court finds that this case should be transferred to the United States District Court for the Western District of Pennsylvania in Pittsburgh.

## V. CONCLUSION

For all of the reasons set forth above in this Opinion and Order, and the Court being otherwise fully advised in the premises,

---

**5.** Detroit Coke also makes a rather tortured argument that transferring this case to Pennsylvania would raise "serious personal jurisdiction issues of the Pennsylvania court over Plaintiff." For the Court to accept this argument it would have to entirely ignore the fact that Plaintiff negotiated, consented to and agreed upon the provision of a Pennsylvania forum in the forum selection clause. It is well-established that challenges to personal jurisdiction may be waived by either express or implied consent. *Burger King v. Rudzewicz,* 471 U.S. 462, 472, n. 14, 105 S.Ct. 2174, 2182, n. 14, 85 L.Ed.2d 528 (1985); *Heller Financial, Inc. v. Midwhey Powder Co., Inc., supra,* 883 F.2d at 1290. As the Seventh Circuit explained in *Midwhey:*

> In the commercial context, parties, for business or convenience reasons, frequently "stipulate in advance to submit their controversies for resolution within a particular jurisdiction".... And, where "forum-selection provisions have been obtained through freely negotiated agreements and are not unreasonable and unjust, their enforcement does not offend due process." *Burger King,* 471 U.S. at 472 n. 14, 105 S.Ct. at 2182 n. 14.

883 F.2d at 1290–1291.

Thus, the Court finds no merit to Plaintiff's "potential personal jurisdiction problems" argument.

IT IS HEREBY ORDERED that Defendants' Motions to Transfer this action to the United States District Court for the Western District of Pennsylvania in Pittsburgh, Pennsylvania be, and hereby is, GRANTED. Accordingly,

IT IS FURTHER ORDERED that this action be TRANSFERRED to the United States District Court for the Western District of Pennsylvania in Pittsburgh, Pennsylvania.