**BANEK INCORPORATED, a Michigan corporation, Plaintiff–Appellant,**

v.

**YOGURT VENTURES U.S.A., INC., a Georgia corporation; Richard Stern and John W. Stern, jointly and severally, Defendants–Appellees.**

No. 93–1107.

United States Court of Appeals, Sixth Circuit.

Argued April 29, 1993.

Decided June 8, 1993 *.

---

* This decision was originally issued as an "unpublished decision" filed on June 8, 1993. On Sep-

358

Adam J. Baker (argued and briefed), Joseph A. Starr, Weisman, Trogan, Young and Schloss, Martin C. Weisman, Birmingham, MI, for plaintiff-appellant.

Jeffrey A. Sadowski, John A. Sinclair, Jeffrey L. Portis, Sally L. Foley (argued and briefed), Harness, Dickey & Pierce, Troy, MI, for defendants-appellees.

Timothy M. Guerriero, Brady & Hathaway, Detroit, MI, Reva S. Bauch, Chicago, IL (briefed), for Cherry Investments, Inc. amicus curiae.

tember 10, 1993, the court designated the opinion as one recommended for full-text publication.

Robert C. Ward, Jr., Atty. Gen., of Michigan, Lansing, MI (briefed), for State of Mich. amicus curiae.

Before: GUY and NELSON, Circuit Judges; and BECKWITH, District Judge.**

RALPH B. GUY, JR., Circuit Judge.

In this interlocutory appeal, plaintiff, Banek Inc., appeals the district court's ruling that a choice of law provision contained in the parties' franchise agreement was valid and enforceable. Upon review of the record and consideration of the arguments of the parties, we conclude that the district court's decision was correct and affirm.

## I.

Plaintiff, Banek Inc., owned by Mr. and Mrs. Banek, entered into negotiations with defendant Yogurt Ventures U.S.A., Inc., a Georgia corporation owned by defendants John and Richard Stern, for the purchase of a Freshëns Yogurt franchise to be located in Monroe, Michigan. After negotiating several changes in the agreement, the parties signed a "Franchise and Development Agreement" in February 1990. Sales at the Monroe location were not as expected, and Banek closed its Freshëns franchise in March 1992. In October 1991, prior to shutting down, Banek filed suit in state court against Yogurt Ventures. The suit alleged breach of contract, various violations of the Michigan Franchise Investment Law (MFIL), violations of the Federal Trade Commission Franchise Rules, common law fraud and misrepresentation, and negligence. In May 1992, after closing the Monroe site, Banek filed a separate action against John and Richard Stern. These two cases were then consolidated. Following removal to federal court based on diversity

jurisdiction, defendants moved for dismissal of all counts on various theories.

The district court granted defendants' motion in part and denied it in part. The court ruled that the choice of law provision in the parties' agreement, providing that Georgia law is to govern the rights and obligations of the parties, was valid and enforceable under Michigan law and thus dismissed plaintiff's claim alleging violations of the MFIL. The district court dismissed plaintiff's claim under the Federal Trade Commission Franchise Rules, holding that there is no private right of action under those rules. The district court also dismissed plaintiff's negligence claim. Only the ruling concerning the choice of law provision is before this court on interlocutory appeal.

In a separate case, another judge in the same district ruled that the same choice of law provision in a different Freshëns Yogurt franchise agreement required that the breach of contract claim be governed by Georgia law, while the plaintiff's other claims—fraud and misrepresentation—were to be governed by Michigan law. *Cherry Invs., Inc. v. Yogurt Ventures U.S.A., Inc.,* No. 92–CV–72428–DT (E.D.Mich. July 27, 1992). We granted Cherry Investments' motion for leave to file an amicus brief.[1] We also granted the State of Michigan's motion for leave to file an amicus brief.

## II.

The franchise agreement between these parties provides:

> This Agreement was made and entered into in the State [of] Georgia and all rights and obligations of the parties hereto shall be governed by and construed in accordance with the laws of the State of Georgia.

** The Honorable Sandra S. Beckwith, United States District Court for the Southern District of Ohio, sitting by designation.

1. Both Banek and Cherry Investments contend that the *Cherry Investments* court held that the choice of law provision was void and unenforceable. A review of the judge's oral ruling shows no such holding. On the contrary, the only difference between the *Cherry Investments* opinion and the *Banek* opinion appears to be the scope of the choice of law provision. In *Cherry Investments,*

the court ruled that the choice of law provision only governed the breach of contract claim, while in *Banek* the court ruled that the choice of law provision extended to all claims raised by the plaintiff. The court's interpretation in *Cherry Investments* resulted in a denial of defendants' motion to dismiss, while the *Banek* court's interpretation resulted in the dismissal of count one of plaintiff's complaint, alleging violation of the MFIL.

We see the issue in this appeal as involving three separate, sequential questions. First, is this a valid choice of law clause or is it a waiver of rights which is prohibited under the MFIL? Second, if the clause is valid, is this choice of law provision enforceable under Michigan choice of law rules? Third, if this provision is valid and enforceable, does Georgia law govern all claims between the parties or only contract claims?

■ We begin with answering the first question in the affirmative. Plaintiff and amicus, Cherry Investments, argue that the choice of law provision in the agreement operates as a waiver of the rights and protections under the MFIL and thus is void under Mich.Comp.Laws Ann. § 445.1527. That section provides:

> Each of the following provisions is void and unenforceable if contained in any documents relating to a franchise:
>
> . . . .
>
> (b) A requirement that a franchisee assent to a release, assignment, novation, waiver, or estoppel which deprives a franchisee of rights and protections provided in this act. This shall not preclude a franchisee, after entering into a franchise agreement, from settling any and all claims.
>
> . . . .
>
> (f) A provision requiring that arbitration or litigation be conducted outside this state. This shall not preclude the franchisee from entering into an agreement, at the time of arbitration, to conduct arbitration at a location outside this state.

Plaintiff argues that the choice of law provision making Georgia law applicable acts as a waiver of "rights and protections" provided under the MFIL. We disagree.

■ The Michigan legislature was specific enough to include forum selection provisions in the list of void provisions, but did not specify choice of law provisions. Seemingly, the Michigan legislature understood that the burdens of being forced to arbitrate a claim in a foreign forum are significant, as subsection (f) makes arbitration or litigation forum selection clauses void. However, litigating in Michigan does not require that Michigan law must govern the dispute. The statute does not expressly void choice of law provisions, and we decline to imply such a prohibition. The Michigan legislature may have purposefully omitted choice of law provisions from those clauses prohibited because it may have realized that other states' laws might provide more protection to franchisees; thus, if a franchisee and franchisor want to choose a different state's law to govern any disputes, the parties may so contract. Providing that waivers and releases are void is not equivalent to voiding choice of law provisions. *See Tele–Save Merchandising Co. v. Consumers Distrib. Co.*, 814 F.2d 1120, 1122–23 (6th Cir.1987) (Ohio law voiding any waiver of the Ohio Business Opportunity Plans Act did not void choice of law provision).

The cases cited by plaintiff and amici are inapposite. As noted in *Wright–Moore Corp. v. Ricoh Corp.*, 908 F.2d 128, 134 (7th Cir. 1990), "[t]he strength of nonwaiver provisions among states varies." In *Wright–Moore,* the Indiana statute made it unlawful to enter into an agreement "[l]imiting litigation brought for breach of the agreement in any manner whatsoever," Ind.Code § 23–2–2.7–1(10), and thus the court held that the choice of law provision in the contract at issue was void. Other states expressly include choice of law provisions in the list of void and unenforceable provisions. *See, e.g.,* Minn.Stat. § 80C.21. The Michigan statute is not so strongly worded, perhaps for the reason expressed above. Alternatively or additionally, the Michigan legislature may have recognized that requiring all franchises located in Michigan be governed by Michigan law, regardless of any agreement to the contrary, would make Michigan a less desirable target state for franchisors, making franchises in Michigan more expensive to own. This would be largely because of a national franchisor's need for uniformity in its business affairs. Having to comply with differing laws for each of the states in which it does business increases expenses. In any event, Michigan has not indicated a desire to bar choice of law provisions either expressly or implicitly.

In *Solman Distributors, Inc. v. Brown–Forman Corp.*, 888 F.2d 170 (1st Cir.1989), the court was faced with a Maine distributor

who had an agreement with a California corporation to be the exclusive distributor of its products in northern Maine. The corporation sought to terminate the contract, giving a 30–day notice as required under the contract. The distributor contended that Maine law did not allow for termination of a contract without good cause and the corporation had none. The corporation argued it was allowed to terminate without good cause under California law and that California law applied because of an express choice of law provision in the contract. In holding that the anti-waiver provision of the Maine statute voided the choice of law provision, the court found that allowing the corporation to cancel the contract without good cause would be contrary to the local public policy requiring good cause. *Id.* at 172. Plaintiff in the present case, unlike *Solman Distributors,* has not shown how the application of Georgia law would violate any specific public policy of Michigan.

▇▇▇ That brings us to the second question: Should the valid choice of law provision be enforced under Michigan's choice of law rules? It is a well-accepted principle that a federal court in a diversity case must apply the conflict of law rules of the state in which it sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 490, 61 S.Ct. 1020, 1020–21, 85 L.Ed. 1477 (1941); *Colonial Refrigerated Transp., Inc. v. Worsham,* 705 F.2d 821, 825 (6th Cir.1983). Therefore, this court must look to Michigan conflict of law principles to determine whether Michigan or Georgia law governs this dispute.

Michigan has adopted the approach articulated in 1 Restatement (Second) of Conflict of Laws § 187 (1971). *Chrysler Corp. v. Skyline Indus. Servs., Inc.,* 199 Mich.App. 366, 502 N.W.2d 715 (1993) (citing *Hardy v. Monsanto Enviro–Chem Sys., Inc.,* 414 Mich. 29, 86 n. 60, 323 N.W.2d 270 (1982)). Under section 187, a contractual choice of law provision will govern unless either:

(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or

(b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

In *Chrysler Corp.,* Chrysler sought indemnification under a provision in its contract with Skyline Industrial Services, providing that if any person were injured on the job Skyline would indemnify Chrysler and hold it harmless. The contract expressly referenced Michigan statutory sections relevant to indemnification agreements of this kind. Skyline sought to avoid having to indemnify Chrysler by arguing that the injury had occurred at a job site in Illinois and, under Illinois law, indemnification clauses of this nature are wholly unenforceable. The Michigan Court of Appeals held that under section 188 Illinois law would normally apply, but that the parties, by express reference to Michigan statutes, had chosen Michigan law. The court went on to conclude that the Illinois law making these clauses void expressed a fundamental public policy of preventing injuries to persons employed in dangerous extrahazardous occupations by motivating owners to take all necessary safety precautions. The court concluded that to apply Michigan law would be violative of a fundamental public policy of Illinois. Thus, following the Restatement, Illinois law was to apply.

▇▇▇ In the present case, the parties do not dispute that there is a substantial relationship with the State of Georgia. Assuming without deciding that under section 188 Michigan law would apply, plaintiff argues that to enforce the choice of law provision and apply Georgia law would violate Michigan's public policy, as expressed in the MFIL, to protect franchisees from overreaching by franchisors and from the superior bargaining power franchisors possess. Initially, we note that this is not a case of a take-it-or-leave-it adhesion contract. Banek successfully negotiated multiple changes in Yogurt Ventures' standard franchise agreement, dispelling the claim of unfair bargain-

ing power.[2] As we have stated previously, we "move cautiously when asked to hold contract clauses unenforceable on public policy grounds...." *Moses v. Business Card Express, Inc.*, 929 F.2d 1131, 1139 (6th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 81, 116 L.Ed.2d 54 (1991).

While we agree with plaintiff that the comprehensive and paternalistic franchise investment law represents Michigan public policy,[3] that does not end the inquiry. The more central question in this case is whether the parties have selected, through their choice of law provision, a jurisdiction in which there is a substantial erosion of the quality of protection that the MFIL would otherwise provide. A court may not assume that, merely because Michigan has adopted a franchise statute, the application of Georgia's laws would be contrary to Michigan's public policy. *Tele–Save*, 814 F.2d at 1123.

"In order for the chosen state's law to violate the fundamental policy of [the forum state], it must be shown that there are significant differences in the application of the law of the two states." *Id.* Banek has failed to show any specific significant differences between the application of Georgia law and Michigan law to their claims. The main thrust of Banek's complaint in this case is that it was not provided with sufficient and accurate information in order for it to make an informed investment decision. The Georgia Sale of Business Opportunities Act provides disclosure standards similar but not identical to the MFIL. *Compare* Mich. Comp.Laws Ann. §§ 445.1505, 445.1508, 445.-1525 with Ga.Code Ann. §§ 10–1–411(b), 10–1–414, 10–1–421 (Michie 1989 and Supp.1992). "The Georgia Sale of Business Opportunities Act was enacted in 1980, Ga.L.1980, p. 1233, § 1, and its purpose was, inter alia, '[t]o prevent and prohibit fraudulent and deceptive practices in the sale of business opportunities.'" *Hornsby v. Phillips*, 190 Ga.App. 335, 338, 378 S.E.2d 870, 874 (1989).

Banek argues, without reference to a particular Georgia code section, that the protections of the Georgia Sale of Business Opportunities Act are only available to franchises located in Georgia or to residents of Georgia. The Georgia Sale of Business Opportunities Act applies to conduct occurring in Georgia regardless of the residence of the person solicited. The relevant section was amended to clarify that the act applies "even if solicitations are of nonresidents of Georgia." Ga. Code Ann. § 10–1–410(3) (Michie Supp.1992). Defendant has conceded and will be bound by its admission that "the alleged fraud occurred in Georgia." Thus, plaintiff's claim that it may not be able to seek recourse under the Georgia Act is incorrect.

Banek next argues, again without citation to any code or case, that its claim for rescission under the Georgia Sale of Business Opportunities Act may be time barred. The code section Banek refers to provides that upon violation of the act "within one year of the date of the contract, upon written notice to the seller, the purchaser or participant may void the contract and shall be entitled to receive from the seller all sums paid to the seller." Ga.Code Ann. § 10–1–417(a) (Michie Supp.1992). The Georgia Court of Appeals has ruled that, while under this section notice must be given to the defendant within one year, the purchaser of a business opportunity has 20 years to file suit. *Hornsby*, 378 S.E.2d at 875. In *Hornsby*, a letter to the seller of the business opportunity was suffi-

---

**2.** Banek was not forced into this investment decision, but chose to negotiate an agreement with the defendant. Having negotiated that agreement, including several changes beneficial to Banek's position, it is now attempting to escape one of the contract's provisions.

The price that Banek paid for its franchise reflected the terms of the agreement. We are hesitant to void the choice of law provision because that would mean Banek would be getting more than it bargained for.

**3.** Various aspects of the MFIL evidence that it represents public policy of Michigan: provisions for enforcement by both public and private actions, Mich.Comp.Laws Ann. §§ 445.1531, 445.-1535; the imposition of joint and several liability of owners, directors, officers, and employees of the franchisor, Mich.Comp.Laws Ann. § 445.-1532; recovery of attorney fees in private actions, Mich.Comp.Laws Ann. § 445.1531; and the imposition of penalties and fines, including up to seven years imprisonment and up to $10,-000 in fines, Mich.Comp.Laws Ann. § 445.1538. Enforcement of the act's provisions by the attorney general would not be affected by a choice of law provision in a franchise contract.

cient. Plaintiff has not shown that notice was not given within one year; thus, we cannot assume its action for rescission would be barred.

Additionally, section 10–1–417(b) provides that any violation of part 3 of the Act, dealing with the sale of business opportunities, "shall constitute an unfair or deceptive act or practice in the conduct of a consumer act or practice or consumer transactions under Part 2 of this article, the 'Fair Business Practices Act of 1975,' and shall authorize an affected participant or purchaser to seek the remedies provided for in Code Section 10–1–399...." Ga.Code Ann. § 10–1–417(b) (Michie Supp.1992). The remedies provided for under section 10–1–399 include attorney fees and treble damages for intentional violations. Furthermore, the statute of limitations for such actions is "two years after the person bringing the action knew or should have known of the occurrence of the alleged violation...." Ga.Code Ann. § 10–1–401 (Michie 1989), *Hornsby v. Phillips*, 378 S.E.2d at 875.

In addition to its various remedies under the Georgia Act, plaintiff may also pursue common law claims for fraud. *See Thompson v. Huckabee Auto Co.*, 190 Ga.App. 540, 379 S.E.2d 411, 413 (1989). It is not sufficient for plaintiff to simply assert that Michigan law should apply "merely because a different result would be reached under" Georgia law. *Tele–Save*, 814 F.2d at 1123. *See also Moses*, 929 F.2d at 1139. Unlike the fundamental policy of Illinois against indemnification agreements for injuries to workers in the *Chrysler* case, or the fundamental policy of Maine requiring good cause for the termination of a distribution contract in *Solman Distributors*, plaintiff has failed to demonstrate how application of Georgia law would violate a specific fundamental policy of Michigan. The choice of law provision in the parties' agreement provides that Georgia law is to be applied. The application of Georgia law in this context would not be violative of a public policy of Michigan and therefore should be enforced. We therefore will enforce the agreement of the parties embodied in the choice of law provision.

■ Finally, because the choice of law provision in the contract is valid and enforceable, we must determine its scope. Plaintiff contends that Georgia law should only govern contract claims, while defendant argues that all claims arising out of the parties franchise dealings should be governed under Georgia law. This court faced a similar question in *Moses* where the choice of law provision read: "This Franchise and License Agreement and the construction thereof shall be governed by the laws of the state of Michigan." 929 F.2d at 1139. We held that the clause clearly referred to more than just the construction of the agreement and extended to plaintiff's claims of fraud and misrepresentation. In the present case, the contract provides "[t]his Agreement was made and entered into in the State [of] Georgia and all rights and obligations of the parties hereto shall be governed by and construed in accordance with the laws of the State of Georgia." As in *Moses*, we find that the choice of law provision is sufficiently broad so as to cover plaintiff's claims of fraud and misrepresentation. Had these claims only been tangentially related to the franchise relationship, we would be much more inclined to find the choice of law provision not applicable. The claims of fraud and misrepresentation that plaintiff has asserted here are directly related to the franchise agreement.

The order of the district court is **AFFIRMED**.