**Robert SHANNON**

v.

**KEYSTONE INFORMATION SYSTEMS, INC.**

Civ. A. No. 92–CV–6562.

United States District Court, E.D. Pennsylvania.

Aug. 4, 1993.

Robert F. Morris, Cutler, Clemm & Morris, P.C., Plymouth Meeting, PA, for plaintiff.

E. Hunter Taylor, Gerstein, Cohen & Grayson, Haddonfield, NJ, Robert W. Keyser, Sacharow, Adler, Gold, Taylor & Keyser, P.C., Cherry Hill, NJ, for defendant.

## MEMORANDUM AND ORDER

JOYNER, District Judge.

### I. *Introduction*

In November 1976, Keystone Information Systems (Keystone) hired Shannon as an at-will salesman to sell computer systems. Keystone employed Shannon continuously for fifteen years until March 17, 1991 when Keystone discharged him because of economic hardship. At the time of his discharge, Keystone compensated Shannon on a commission-only basis.

Keystone employed a sales incentive program where each salesman agreed to an individualized plan that outlined the terms under which Keystone would pay a commission. Under Shannon's last agreement, he earned a 10% commission on each sale provided that Keystone first received a bona fide sales order and payment from the purchasing organization. The agreement took effect on February 15, 1990 and technically expired September 30, 1990.

In December 1990, Keystone notified Shannon orally and in writing of his pending termination. The letter reiterated Shannon's sales incentive agreement stating in part:

You have a 90 day reservation on your customers and prospects until March 16, 1991.... A bonified [sic] sales order *and payments* must be received by Keystone on or before March 16, 1991 before com-

missions are earned by you. (emphasis in original).

At the time, Shannon was trying to close a computer sale to the Raytown School District in Raytown, Missouri. He initiated the sale in the spring of 1988 and had been intimately involved in the contracting for over two years. However, as of Shannon's discharge on March 17, the contract had yet to be submitted to Raytown's school board for approval. Keystone formally settled the contract in May, 1991.

Shannon would have earned $55,000 had he closed the contract prior to his departure. While Shannon acknowledged that he had technically not earned the commission, he nevertheless felt that based on his time with Keystone and the effort he had placed in the Raytown contract, Keystone would probably pay him $35,000–$45,000. Keystone, however, offered Shannon $8,000–$10,000. Shannon refused the offer and filed this suit to recover the $55,000.

Shannon alleged that Keystone's failure to pay him a commission on the Raytown contract constituted a breach of oral contract. He argued that since his sales incentive agreement with Keystone expired in September, six months prior to his discharge, he was, by default, working under an oral contract of employment that guaranteed him a commission for a successful sale. Alternatively, Shannon alleged that Keystone planned the timing of his discharge in order to avoid paying the commission.

Now before the court is Keystone's motion for summary judgment. Keystone asserts that the sales agreement still applied to Shannon, and, under its terms, Shannon simply had not earned the right to a commission.

## II. *Discussion*

Since Shannon is a Pennsylvania resident and Keystone is a New Jersey corporation, we must first decide whether Pennsylvania or New Jersey law shall govern the case.

### A. *Choice of Law*

In a diversity action, we apply Pennsylvania's choice of law rules. *See Tiernan v. Devoe*, 923 F.2d 1024, 1033 (3d Cir.

1991) *citing Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Pennsylvania's choice of law principles dictate that in cases involving contract disputes, the state having the most interest in the controversy and which is most intimately concerned with the outcome is the forum whose law should be applied. *See In re Complaint of Bankers Trust Co.*, 752 F.2d 874, 882 (3d Cir.1984). Thus, in an action for a breach of contract, the court must consider the following in order to determine which forum has the more significant contact: 1) the place of negotiation, contracting and performance of the contract in question; 2) the location of the subject matter of the contract; and 3) the parties' citizenship. *Reading Metal Craft Co. v. Hopf Drive Associates*, 694 F.Supp. 98, 104 (E.D.Pa.1988).

The balance of significant contacts surrounding Shannon's employment with Keystone centers around the Keystone office in New Jersey. First, Shannon's Pennsylvania residency is negated by the fact that Keystone is a New Jersey corporation with its only office in New Jersey. Second, although Shannon claims that he does most of his business in Pennsylvania, his geographical sales territory apparently included a much wider area than just one state. The sale giving rise to this case stemmed from a sale in Raytown, Missouri. Third, it appears that Shannon and Keystone negotiated, agreed upon and executed Shannon's employment contract at Keystone's New Jersey office. Fourth, the Keystone office served as Shannon's base of operations throughout his 15 year tenure with Keystone. And finally, Keystone delivered both verbal and written notification of his discharge while Shannon was at the Keystone office.

Balancing these factors, New Jersey has the more significant contacts with the dispute. We, therefore, hold that New Jersey law controls the case.

### B. *Summary Judgment*

Having resolved the conflict of laws issue, we now address Keystone's motion for summary judgment.

■ When considering a motion for summary judgment, courts must view the evidence in a light most favorable to the non-moving party. *Eastman Kodak Co. v. Image Technical Services Inc.*, —— U.S. ——, —— – ——, 112 S.Ct. 2072, 2076–77, 119 L.Ed.2d 265 (1992). Rule 56(c) of the Fed. R.Civ.P., however, mandates the entry of summary judgment when an examination of all available evidence demonstrates that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The moving party bears the initial burden of clearly demonstrating the absence of a genuine issue of material fact in the non-moving party's case. *Id.* at 323, 106 S.Ct. at 2553. Once the moving party meets its burden, the non-moving party must go beyond the pleadings, affidavits, depositions and interrogatories to show that there is more than metaphysical doubt as to material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552.

■ In those cases where a salesman attempts to claim a share of a commission from his former employer, the salesman's right to that commission is governed by the laws of agency and contracts. *De Benedictis v. Gerechoff*, 134 N.J.Super. 238, 339 A.2d 225, 228 (1975). In determining whether the salesman has a right to the commission, the dispositive factor is the express agreement between the parties. *Id.* Where there is no express agreement, the court must look to that organization's customary method of distributing commissions. *Id.*

■ Thus, regardless of the agreement's expiration date, Shannon is bound by the sales agreement's terms and we do not reach Shannon's assertion that Keystone owed him a commission based on an oral contract of employment. In light of the standard for summary judgment, Shannon failed to demonstrate that there exists any issue of material fact in its allegations. We must, therefore, grant Keystone's motion for summary judgment.

Contrary to Shannon's assertions, we find that the agreement effectively bound both parties despite its expiration date. First, the agreement's language appears to indicate that the expiration date is a mere formality. Unless Keystone's management makes a deliberate change in the plan, the agreement remains effective despite the expiration date. This is supported by the fact that the 1990 agreement superseded Shannon's previous sales incentive agreement established in 1985. Second, Shannon himself felt that the agreement's terms governed his commission. He testified that even though he had not earned the commission under the agreement, he felt that Keystone would nevertheless pay a reduced commission because of his 15 year tenure and work on the Raytown contract. Lastly, Keystone's 90–day termination notice delivered to Shannon could have by itself constituted an express agreement sufficient to bind both parties. Even so, the notice clearly reinforced the terms already outlined in Shannon's sales incentive agreement.

Even if we were to decide that there was no express agreement, Shannon is still bound by the agreement. An examination of Keystone's customary method of paying commissions leads us back to its sales incentive program. And since the program emphasizes individualized plans, we must refer to Shannon's 1990 agreement with Keystone.

Thus, regardless of the expiration date, Keystone's sales incentive agreement governs the circumstances under which Shannon earns a commission. Under the agreement, Shannon simply did not earn the commission.

Additionally, Shannon in his brief freely admits that this is not a wrongful discharge action. He does not claim that his employment contract prevented Keystone from terminating his employment. Nor did he dispute the fact that as an at-will employee, Keystone could terminate him at anytime and for any reason. Thus, the timing of Shannon's discharge should not be an issue.

■ In any event, since he had no right to a commission, Shannon's alternative argument that Keystone deliberately timed Shannon's discharge in order to avoid paying a commission must also fail. In every contract, there is an implied covenant that neither party will do anything to destroy a

party's right to receive the fruits of a contract. *Feldman v. U.S. Sprint Communications Co.*, 714 F.Supp. 727, 731 (D.N.J.1989). Thus, an employer may not interfere with the mechanism through which an employee receives a commission that he has already earned. *Id.* Here, however, since Shannon had not earned the Raytown commission, he cannot claim that Keystone prevented him from receiving the payment.

Shannon has failed to show that there exists genuine issue of material facts in his claims. Shannon's commission on the Raytown contract is governed by his sales incentive agreement with Keystone and not an oral contract of employment. Under the agreement, Shannon simply had not earned the commission. Alternatively, since he had no right to a commission, Shannon's bad faith allegation fails to state a claim.

### ORDER

AND NOW, this 4th day of August, 1993, upon consideration of Defendant's Motion for Summary Judgment and Plaintiff's response thereto, it is hereby ORDERED that Defendant's Motion for Summary Judgment is GRANTED.