**COTTMAN TRANSMISSION SYSTEMS, INC.**

v.

**Donna MELODY and Lee W. Melody.**

Civ. A. No. 94–CV–2038.

United States District Court,
E.D. Pennsylvania.

Oct. 26, 1994.

Order Denying Reconsideration
Dec. 7, 1994.

Todd P. Leff, Renee Harris Sackey, Cottman Transmission Systems, Ft. Washington, PA, for plaintiff.

Arthur L. Pressman, Maryam Mahdavi, Abraham, Pressman & Bauer, P.C., Philadelphia, PA, for defendants.

### MEMORANDUM

JOYNER, District Judge.

This is an action filed by Plaintiff, Cottman Transmission Systems, Inc. for alleged violations of a franchise agreement by Defendants Melody. Plaintiff alleges fraud, copyright infringement, and breach of contract.

Defendants' counterclaim alleges fraud, negligent misrepresentation, and violation of the California Franchise Investment Law ("CFIL").[1] The issue currently before the Court is whether California or Pennsylvania law should be applied to the litigation's substantive claims.

Defendants have moved to apply California law on the grounds that 1) California has more numerous and substantial contacts with the subject matter of the suit; and 2) California has a strong public policy against choice of law provisions. Defendants argue that this public policy against choice of law provisions, embodied in CFIL § 31000, overrides the parties' agreement to be bound by Pennsylvania law in the event of litigation.

By way of response, Plaintiff asserts that 1) Pennsylvania, not California, has more substantial and numerous contacts with the subject matter of the suit; 2) the policy articulated in § 31000 of the CFIL is not "fundamental" and thus does not void a freely negotiated choice-of-law provision.[2]

### FACTS AND PROCEDURAL HISTORY

In March of 1993, Defendant Lee Melody answered an advertisement from Joseph Sanfellipo, a franchise broker in California and the two met to discuss Defendant's interest in acquiring a Cottman franchise owned by Mr. Sanfellipo. From March, 1993 to April, 1993 negotiations between Mr. Sanfellipo and Defendants were conducted in California for the sale of a Cottman franchise.

Defendants' attorney reviewed the franchise agreement before Defendants executed the contract in Philadelphia. The franchise agreement provided that the parties chose to apply Pennsylvania law in the event of any

---

1. Defendant also alleges a violation of the California Seller–Assisted Marketing Plan Act (SAMPA). Defendant, however, may not claim protection under this act. Section 1812.201(a)(3)(b) of SAMPA states that a "seller assisted marketing plan" *shall not* include:

 (2) a franchise defined by the Franchise Investment Law (Division 5 (commencing with Section 31000) of Title 4 of the Corporations Code) which is registered with the California Department of Corporations, or is exempt under Chapter 1.

 As Plaintiff filed an application for franchise registration under the CFIL, defendant may not state a claim against plaintiff under SAMPA.

2. Plaintiff also argues that there was in fact no sale between the franchisor and franchisee to be governed by California law. We find this argument inconsistent with Plaintiff's other allegations.

 Plaintiff cannot first assert that a contract for sale of the franchise was signed and executed at their offices, and next deny that a sale occurred between these two parties. We reject Plaintiff's third argument as inconsistent.

dispute.[3]

Defendant Lee Melody travelled to Pennsylvania for three weeks of training. Defendant Donna Melody attended the third week of training in Pennsylvania. The franchise agreements and other contracts were entered into at Plaintiff's offices in Pennsylvania on May 6, 1993.

Subsequent to the purchase of the Cottman franchise, Defendants received various training and informational materials sent from Plaintiff in Pennsylvania to their offices in California. Additionally, Plaintiff's personnel visited California to render assistance to Defendants in conducting their business.

Defendants operated a Cottman Center in La Habra, California until early March, 1994. Defendants were unable to profit from the franchise, and in fact had substantial losses. In March, 1994, Defendants advised Plaintiff of their intention to rescind the License Agreement and began to operate an independent transmission business at the site.

Defendants filed suit against Plaintiff and Sanfellipo in the Superior Court of Orange County, California on March 2, 1994. Plaintiff filed the instant action against Defendants in the Court of Common Pleas of Montgomery County, Pennsylvania on March 8, 1994, which was removed to this Court.

## STANDARD

■ When jurisdiction is based on diversity of citizenship, the district court generally applies the conflict of law rules of the state in which it sits. *Klaxon Co. v. Stentor Elec.*

*Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941). As previously stated by this Court, "the laws of Pennsylvania and California are substantially in agreement insofar as the enforcement of choice of forum and choice of law clauses are concerned." *Cottman Transmission Systems, Inc. v. Melody,* 851 F.Supp. 660, 670 (E.D.Pa. 1994).

■ Both Pennsylvania courts and California courts will uphold an express choice of law provision in a contract so long as the provision bears a "reasonable relationship" to the state whose law is chosen to govern, and the chosen law does not violate a "strong public policy" that would otherwise protect a party.

Both of these standards stem from § 187 of the Restatement (Second) of Conflict of Laws. § 187 states that the parties' choice of law provision will govern *unless:*

(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or

(b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of a particular issue, and which, under the rule of Section 188,[4] would be the state of the applicable law in the absence of an effective choice of law by

**3.** The agreement states, in relevant part:

27. Jurisdiction, Venue, and Controlling Law—This agreement has been entered into and shall be governed by and construed and enforced in accordance with the laws of Pennsylvania.

a. With respect to any legal proceedings arising out of this Agreement; OPERATOR and COTTMAN consent to the jurisdiction and venue of any court of general jurisdiction of Philadelphia County or Montgomery County of Pennsylvania or the United States District Court for the Eastern District of Pennsylvania, and any legal proceedings arising out of this Agreement shall be brought in such courts.

**4.** § 188 of the Restatement provides:

(1) The rights and duties of the parties with respect to an issue in contract are determined

by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in Section 6.

(2) In the absence of effective choice of law by the parties (see Section 187) the contacts to be taken into account in applying the principles of Section 6 to determine the law applicable to an issue include:
(a) the place of contracting,
(b) the place of negotiating the contract,
(c) the place of performance,
(d) the location of the subject matter of the contract, and
(e) the domicile, residence, nationality, place of incorporation and place of business of the parties.
These contacts are to be evaluated according to their relative importance with respect to the particular issue. Restatement § 188.

the parties.[5] Restatement § 187(2).

## DISCUSSION

### I. REASONABLE BASIS FOR THE CHOICE OF PENNSYLVANIA LAW

■ Pennsylvania courts have traditionally held that a choice of law provision in a contract will be upheld as long as the transaction bears a "reasonable relationship to the state whose law is governing." *Novus Franchising Inc. v. Taylor*, 795 F.Supp. 122, 126 (M.D.Pa.1992) (citing *Churchill Corp. v. Third Century, Inc.*, 396 Pa.Super. 314, 578 A.2d 532, 537 (1990), *app. denied*, 527 Pa. 628, 592 A.2d 1296 (1991)); *Instrumentation Assoc. Inc. v. Madsen Elecs. Ltd.*, 859 F.2d 4, 5–6 (3d Cir.1988). *See also AmQuip Corp. v. Pearson*, 101 F.R.D. 332, 337 (E.D.Pa.1984). Thus Pennsylvania courts will honor contractual choice-of-law provisions where the parties have sufficient contacts with the chosen state. *Jaskey Fin. and Leasing v. Display Data Corp.*, 564 F.Supp. 160 (E.D.Pa.1983).

Neither party contests that the purchase of the Cottman franchise bears a "reasonable relationship" to Pennsylvania law. The contract was partially negotiated at meetings in Pennsylvania, made with a Pennsylvania corporation, executed by all the parties in Pennsylvania, and Defendants were required to make continuing payments to Pennsylvania for a period of fifteen years. These facts demonstrate that the transaction at issue bears a reasonable relationship to Pennsylvania law, and thus the choice of law provision is valid.

### II. CONTACTS

■ Whether a valid choice of law provision is enforceable under the more stringent requirements of § 187(2)(b) and Pennsylvania law is in part determined by which state has "materially greater interest" in the outcome of the case. In *Shannon v. Keystone Sys.*, 827 F.Supp. 341, 343 (E.D.Pa.1993), our

Court stated that Pennsylvania's choice of law principles require "[t]he state having the most interest in the controversy and which is most intimately concerned with the outcome [to be] the forum whose law should be applied."

■ In order to determine which forum has the most significant contacts, we must consider, "1) the place of negotiation, contracting and performance of the contract in question; 2) the location of the subject matter of the contract; and 3) the parties' citizenship." *Id.* at 343; Restatement § 188.

It appears to this Court that there are an equal number of contacts with California and Pennsylvania. Defendants assert substantial contacts by virtue of the fact that they were California residents, that documents were received in California, they received training at the franchise in California, and that the majority of negotiations regarding the purchase took place in California.

Plaintiff has an equally compelling argument for substantial contacts as its principal office was in Pennsylvania, negotiations were completed in Pennsylvania, the contracts were signed in Pennsylvania, payments were to be sent to Pennsylvania, and Defendants allegedly received "all" of their training there.

As there are an equal number of contacts with Pennsylvania and California and therefore neither state has a "materially greater" interest in the outcome of the case, we must consider whether enforcement of the contract's choice of law provision contravenes a "fundamental public policy" of the state not chosen under the agreement.

### III. PUBLIC POLICY

■ Defendants contend that the broad language of § 31000 of the CFIL establishes a "fundamental public policy" that would be violated by applying Pennsylvania law.[6]

**5.** Although Plaintiff contends that no Pennsylvania court has expressly recognized the public policy exception to the Restatement, we find the decision in *Chestnut v. Pediatric Homecare*, 420 Pa.Super. 598, 617 A.2d 347 (1992) compelling. There, the Pennsylvania Superior Court affirmed a decision that relied on § 187 of the Restatement of Conflict of Laws. *See also Henning v.*

*Metropolitan Life Ins. Co.*, 546 F.Supp. 442 (M.D.Pa.1982) (court employed similar two-part analysis that considered both significant contacts and interest of the other jurisdiction).

**6.** § 31000 of the CFIL provides:

Plaintiff argues, though, that even if the statute establishes a public policy, California upholds and enforces freely negotiated choice of law provisions.[7] Further, they argue that courts should act cautiously when invalidating contractual agreements on public policy grounds.

To date, no Pennsylvania court has spoken on whether a statutory provision such as § 31000 of the CFIL expresses a "fundamental public policy" that should void a contractual choice of law provision. However, the reasoning of other courts is instructive.

Several circuits have held that a statutory provision such as the CFIL expresses a "fundamental public policy" that may invalidate a contractual choice of law provision. For example, in *Hengel Inc. v. Hot N' Now, Inc.* 825 F.Supp. 1311 (N.D.Ill.1993), relying on the reasoning of the Seventh Circuit,[8] the District Court decided that a statute almost identical to CFIL[9] expressed a fundamental public policy that would void a choice of law provision.

In contrast, the Sixth Circuit has expressed caution in invalidating choice of law contract clauses on public policy grounds.

*Banek Inc. v. Yogurt Ventures U.S.A., Inc.,* 6 F.3d 357 (6th Cir.1993). The anti-waiver statute in *Banek,* also virtually identical to the CFIL, made "void and unenforceable" any "release, assignment, novation, waiver, or estoppel which deprives a franchisee of rights and protections provided in this Act." While acknowledging that this provision was motivated by some policy considerations, the Court decided that this provision of the statute was not motivated by a policy that was "fundamental." *Id.* at 362. As it was not "fundamental," it could not void a contractual choice of law clause unless the choice of law eroded protections established under the statute.

Quoting *Tele–Save Merchandising v. Consumers Distributing,* 814 F.2d 1120, 1123 (6th Cir.1987), the *Banek* Court stated that "in order for the chosen state's law to violate the fundamental policy of [the forum state], it must be shown that there are significant differences in the application of the law of the two states." Thus the Court concluded that it was not enough that Michigan had a policy to protect franchisees; rather, the central question was whether the choice of law

The Legislature hereby finds and declares that the widespread sale of franchises is a relatively new form of business which has created numerous problems both from an investment and business point of view in the state of California. Prior to the enactment of this division, the sale of franchises was limited only to the extent to which the Corporate Securities Law of 1968 applied to such transactions. California franchises have suffered substantial losses where the franchisor or his representative has not provided full and complete information regarding the franchisor-franchisee relationship, the details of the contract between franchisor and franchisee, and the prior business experience of the franchisor.

It is the intent of this law to provide each prospective franchisee with the information necessary to make an intelligent decision regarding the franchise being offered. Further, it is the intent of this law to prohibit the sale of the franchises where such sale would lead to fraud or a likelihood that the franchisor's promise would not be fulfilled, and to protect the franchisor by providing a better understanding of the relationship between the franchisor and franchisee with regard to their business relationship. Cal.Corp.Code § 31001 (West.1985).

7. Both Plaintiff and Defendants have requested that we review Assembly Bill No. 1920 of the California Legislature, which was signed into law on September 30, 1994. The bill amends the Business and Professional Code relating to franchises.

We find this provision inapplicable to the instant matter. The statute states that it applies to "any *new* franchise located in this state and to any existing franchise agreement renewed *after the effective date* of this act." (Emphasis added). As the franchise agreement in the instant matter falls into neither category, the amendment is inapplicable.

8. In *Wright–Moore Corp. v. Ricoh Corp,* 908 F.2d 128 (7th Cir.1990), the court invalidated a contractual choice of law provision on the grounds that the Indiana waiver provision could be read to invalidate the choice of law provisions in franchise agreements. *Id.* at 132–34.

9. § 31512 of the CFIL reads, "Any condition, stipulation or provision purporting to bind any person acquiring any franchise to waive compliance with any provision of this law or any rule or order hereunder is void."

Illinois' statute read, "Any condition, stipulation, or provision purporting to bind any person acquiring any franchise to waive compliance with this Act, is void."

"caused a substantial erosion of the quality of protection" the statute would have otherwise provided. *Banek*, at 362.

This Court finds the Sixth Circuit's analysis more persuasive, and therefore will review the law of both California and Pennsylvania to discern any "significant differences" between the two states' application of the law. If the choice of Pennsylvania law would cause a "substantial erosion of the quality of protection" afforded under the CFIL, then California law must be applied. However, if this is not true, then the CFIL does not represent a "fundamental policy" that would be violated by the application of Pennsylvania law.

 In the present matter, Defendants' claims include allegations of fraud, negligent misrepresentation and violation of the CFIL. The definition of a cause of action for fraud under California law and Pennsylvania law are virtually identical.[10] The remedies in both California and Pennsylvania include damages and/or recision of contract.[11]

10. The elements of fraud under California law include:
 1. intent to deceive, by a false representation;
 2. by suppression of truth or lack of reasonable ground to believe in its truth;
 3. reliance upon such representations with resulting damages.
*In re Gap Stores Securities Litigation*, 457 F.Supp. 1135 (D.D.C.1978); Cal.Civil Code §§ 1709, 1572 (elements of actual fraud).
 The elements of fraud under Pennsylvania law include:
 1. anything calculated to deceive, whether by single act or combination; or
 2. by suppression of truth or suggestion of what is false;
 3. reliance upon such representations with resultant damages.
*Moser v. DeSetta*, 527 Pa. 157, 589 A.2d 679 (1991).

11. Under California law, a defrauded party may seek recision or damages in the same action. *Squire's Dept. Store v. Dudum*, 115 Cal.App.2d 320, 252 P.2d 418 (1953); *Williams v. Marshall*, 37 Cal.2d 445, 235 P.2d 372 (App.1951); *Engle v. Farrell*, 75 Cal.App.2d 612, 171 P.2d 588 (1946).
 Likewise, under Pennsylvania law a defrauded party may seek recision or damages. *National Bldg. Leasing v. Byler*, 252 Pa.Super. 370, 381 A.2d 963 (1977); *Greenberg v. Tomlin*, 816 F.Supp. 1039 (E.D.Pa.1993).

12. In California, to establish negligent misrepresentation, plaintiff must show:

 "Negligent misrepresentation" under California[12] and Pennsylvania law[13] is likewise treated similarly. Not surprisingly, the remedies under both states' laws entitle Plaintiff to the same relief.

As the protections and remedies for fraud and negligent misrepresentation under both states' laws are virtually the same, the application of Pennsylvania law would result in no "erosion of the quality of protection" offered under California law.

Accordingly, we DENY Defendants' Motion to apply California law. An appropriate Order follows.

## MEMORANDUM

Defendants Melody have filed a Motion for Reconsideration of this Court's Order of October 27, 1994, in which this Court decided that a choice of law provision was valid and enforceable, and that Pennsylvania law would apply to this action.

 1. Defendant must have made a misrepresentation as to a past or existing material fact;
 2. representation must have been untrue;
 3. Regardless of his actual belief, defendant must have made a representation without any reasonable ground for believing it to be true;
 4. representation must have been made with intent to induce plaintiff to rely upon it;
 5. plaintiff must have been unaware of falsity of representation and must have acted in reliance upon its truth and must have been justified in relying upon it;
 6. As a result of that reliance, plaintiff must have suffered damages. *Walters v. Marler*, 83 Cal.App.3d 1, 147 Cal.Rptr. 655 (1978).

13. In Pennsylvania, to prove a fraudulent misrepresentation, a plaintiff must show:
 1. defendant made a representation;
 2. representation must have been untrue;
 3. defendant knew or should have known representation was untrue when made;
 4. representation was calculated to induce plaintiff to act on it; and
 5. plaintiff, believing the representation was true was induced to act upon the representation;
 6. plaintiff suffered damages as a result of that reliance.
See *Seabord Sur. Co. v. Permacrete Constr.*, 221 F.2d 366 (3d Cir.1955); *Greenberg*, 816 F.Supp. at 1039.

The purpose of a motion to reconsider is to "correct manifest errors of law or fact or to present newly discovered evidence." *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir.1985). Having considered Defendants' motion, this Court finds that our earlier ruling shall remain in full force and effect.

Defendants argue that California law should be applied to their counterclaims as: 1) there is no Pennsylvania franchise law providing protection to Defendants similar to the California Franchise Investment Law (CFIL); 2) the application of Pennsylvania law would be a violation of California public policy as Defendants will not be able to recover the same damages or assert violations of the California statute under Pennsylvania law; and 3) the choice of law provision is not broad enough to govern claims raised under the CFIL.

First, Defendants argue that their rights will be compromised by the application of Pennsylvania law as this state has no statute analogous to the CFIL. Defendants argue that this Court should disregard the holding in *Banek, Inc. v. Yogurt Ventures, U.S.A., Inc.*, 6 F.3d 357 (6th Cir.1993). We agreed with the *Banek* court's reasoning that a choice of law agreement should be upheld unless a "substantial erosion of the quality of protection" afforded under a "fundamental state policy" is shown.

Defendants argue that the Sixth Circuit so held because the franchisee in that case was protected by the Georgia Business Opportunities Act, even though the Michigan Franchise Investment Law was not applied. The *Banek* court stated that it "is not sufficient for plaintiff to simply assert that Michigan law should apply 'merely because a different result would be reached' under Georgia law." *Id.* at 363 (citations omitted). The court reasoned that application of Georgia law would not "substantially erode" the protec-

tions offered the franchisee because the plaintiff could pursue common law claims for fraud and breach of contract. *Id.; see also Tele–Save Merchandising Co. v. Consumer Distributing, Co.*, 814 F.2d 1120 (6th Cir. 1987) (one reason cited by court in applying chosen state's law was that plaintiff could pursue actions under common law fraud and breach of contract theories, although franchisee's state statute offered different protection).

As in *Banek*, Defendants in the present matter may pursue common law actions for fraud and breach of contract. That a different result may be reached under Pennsylvania law does not signal a "substantial erosion" of protections of the franchisee. Thus, merely because Pennsylvania does not have a statute analogous to the CFIL does not mean that there has been a "substantial erosion" of protections afforded a franchisee.[1]

Second, in an argument closely related to the first, Defendants state that their protection under a "fundamental [California] policy" will be "eroded" because they will not be afforded the same remedies under California and Pennsylvania law. As support for this contention, Defendants cite the sole Ninth Circuit case where a choice of law provision was not enforced, and where damages and recission were allowed under the CFIL. *Dollar Sys. v. Avcar Leasing Sys.*, 890 F.2d 165 (9th Cir.1989).

However, that case is distinguishable from the present matter. It was clear in *Dollar Systems* that the parties' contacts with California were more numerous than those with the chosen state.[2] Thus, the decision was not rendered under choice of law principles. Instead, the CFIL was applied to the dispute based upon California's more substantial interest in the transaction. The Court did not compare protections under the chosen law and California law; nor did the Court award

---

1. Defendants cite *Electrical Magneto Service Co., Inc. v. Ambac International Corp.*, 941 F.2d 660 (8th Cir.1991) as further support for their contention that absent an equivalent statute, a choice of law provision will be invalidated. However, that case involved a public policy which had no right or remedy at common law. It is therefore distinguishable from the present matter, as the prevention of fraud in the sale of

franchises is one which may be enforced by existing common law rights and remedies in Pennsylvania.

2. The contract was negotiated, executed, and franchise fees paid for in California. Neither party disputed that the offer to sell and offer to buy were made in California. *Id.*

recission and restitution so as to avoid an "erosion of protection" under a "fundamental policy."[3] Because *Dollar Systems* offers no guidance in comparing the rights and remedies available under the CFIL and common law comparable to our own, we do not rely on it to reconsider our prior determination. Defendants do not allege any new law to alter our disposition of the case.

Finally, Defendants assert under *Dollar Systems* that the present choice of law clause is not broad enough to extend Pennsylvania law to their counterclaims under the CFIL. We find this argument unpersuasive as the language in the present waiver is broader than the waiver in *Dollar Systems*.[4]

In *Dollar Systems* the franchise agreement stated, "[t]his Agreement was made and entered into in the State [of] Georgia and all rights and obligations of the parties hereto shall be *governed by* and *construed* in accordance with the laws of the State of Georgia." *Id.* at 171 (emphasis added). The present contract states that "[t]his Agreement has been entered into and shall be *governed by,* and *construed* and *enforced* in accordance with the laws of Pennsylvania." License Agreement, ¶ 27 (emphasis added). Thus, the clause in the present matter is broader than the clause in *Dollar Systems,* and may be read to govern Defendants' counterclaims.

Accordingly, because the Defendants' memorandum does not present such a subsequent change of the facts or the law that makes the original decision fundamentally wrong, our Order of October 27, 1994 stands. *See Harsco,* 779 F.2d at 909.

An appropriate Order follows.

3. By contrast, we analyzed the present matter under conflicts of law principles as it was not clear which law should govern. We discussed whether a "fundamental policy" of California would be violated by the application of Pennsylvania law. We decided that the fundamental policy of the CFIL is to protect against fraud in the sale of franchises and that the policy could be enforced under existing common law rights and remedies in Pennsylvania. Thus, we decided that the application of Pennsylvania law would result in no "erosion of rights" afforded under a "fundamental [California] policy." Restatement (Second) of Conflicts of Laws §§ 187–188.

***ORDER***

AND NOW, this 7th day of December, 1994, upon consideration of the Defendant's Motion for Reconsideration of this Court's Order of October 27, 1994, and replies thereto, the Motion is hereby DENIED.

4. Although merely persuasive, in *Moses v. Business Card Express, Inc.,* 929 F.2d 1131 (6th Cir. 1991), *cert. denied,* 502 U.S. 821, 112 S.Ct. 81, 116 L.Ed.2d 54 (1991), the court explained the difference between choice-of-law clauses like the one contained in *Dollar Systems* and the present agreement. One narrowly states that it will be construed under a certain state's law, and the other broadly states that the agreement shall be governed, construed and enforced under a certain state's law. *Moses,* 929 F.2d at 1140. The *Moses* court concluded that a broad statement contained within a choice of law agreement would govern all claims between the parties. *Id.*