John JOHNSON, Plaintiff–Appellant,

v.

VENTRA GROUP, INC. and Ventratech Limited, Defendants–Appellees.

No. 98–1428.

United States Court of Appeals, Sixth Circuit.

Argued Aug. 5, 1999.

Decided Sept. 10, 1999.

Rehearing and Suggestion for Rehearing En Banc Denied Nov. 17, 1999.

Ronald E. Westen (argued and briefed), Lupo & Koczkur, Detroit, MI, for Plaintiff–Appellant.

William A. Sankbeil (briefed), Joanne G. Swanson (argued and briefed), Eric I. Lark (briefed), Kerr, Russell & Weber, Detroit, MI, for Defendants–Appellees.

Before: JONES, SILER, and GILMAN, Circuit Judges.

## OPINION

GILMAN, Circuit Judge.

John Johnson became the United States sales representative for Manutec Steel Industries, Inc., a Canadian corporation, in 1985. He filed suit in the Province of Ontario, Canada against Manutec when his employment was terminated in 1988, claiming damages under the terms of his contract. The Supreme Court of Ontario awarded him damages of approximately $1,500,000 in February of 1990. He now seeks to enforce this judgment against Ventra Group, Inc. and Ventratech Limited, Manutec's alleged successor corporations. The district court granted summary judgment in favor of the defendants. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

Manutec and Johnson entered into a sales representation contract on September 10, 1985, according to which he was to open and develop Manutec's stamping business in the automotive industry. Johnson was to be the exclusive sales representative for Manutec in the United States in exchange for a five percent com-

mission on all sales. The contract's termination clause provided as follows:

> The initial term of this agreement shall be three (3) years. At the end of the first year and at the end of each year thereafter, this agreement shall be automatically extended for an additional year unless either party gives notice to the other of termination, for the purposes of providing, in effect, a two (2) year termination notice.

According to Johnson, he proceeded to develop a substantial amount of business with Chrysler and General Motors. On April 7, 1988, however, Manutec terminated Johnson's contract without notice. Between the time that Johnson entered into the contract in 1985 and the time that the contract was terminated in 1988, Manutec became the wholly-owned subsidiary of Ventra Manufacturing, Ltd. through a stock purchase that occurred on September 30, 1987.

Johnson filed suit against Manutec in the Ontario trial court (known as the Supreme Court of Ontario) on May 25, 1988. Ventra Manufacturing was not made a party to the lawsuit. Johnson alleged that Manutec terminated his contract to avoid paying him commissions without the requisite two years' notice. On February 26, 1990, Johnson obtained a default judgment in the amount of approximately $1,500,000 against Manutec from the Supreme Court of Ontario.

Between the time that Johnson filed his lawsuit and the time that he won his judgment, however, various corporate changes had occurred. First, Manutec and its parent corporation, Ventra Manufacturing, had gone through another transformation. On January 13, 1989, ITL Industries Limited, a publicly traded Canadian corporation, acquired 100 percent of the outstanding shares of Ventra Manufacturing. ITL then changed its name to Ventra Group, Inc., one of the named defendants in the present action. Manutec thus became a wholly-owned subsidiary of Ventra Group. Second, in mid-December of 1989, the se-cured creditors of Manutec placed the company into receivership because of its insolvency. The secured creditors appointed two receiver-managers, Price Waterhouse and Richter & Partners, Inc., who controlled Manutec's operations during the period of its receivership. It was during this period that Johnson obtained the default judgment against Manutec.

In order to maximize the value obtained from the sale of Manutec's secured property, the receivers sold at auction all of Manutec's assets located at its plant in Brampton, Ontario to Chrysler and various third parties. On November 23, 1990, approximately one year after Manutec had been placed in receivership, Ventra Group and its wholly-owned, newly incorporated subsidiary Ventratech (the other named defendant in the instant action) purchased certain assets from one of Manutec's other plants in Ridgetown, Ontario.

On January 13, 1994, Johnson filed his First Amended Complaint against Ventra Group and Ventratech in the Circuit Court of Wayne County, Michigan to enforce the judgment that he had obtained against Manutec from the Supreme Court of Ontario. He sought recovery based on the following theories: (1) enforcement of a foreign judgment through successor liability, (2) breach of contract, and (3) unjust enrichment. Ventra Group removed the case to the United States District Court for the Eastern District of Michigan on the basis of diversity of citizenship.

In February of 1995, Ventra Group and Ventratech filed a motion for the determination of forum law and a motion for summary judgment. Johnson, in response, filed his own motion for summary judgment and a motion for leave to file a Second Amended Complaint. The district court heard all of the motions on May 4, 1995. On June 7, 1995, the court issued an opinion granting the motion for a determination of forum law, ruling that Ontario law applied to the action. It then denied Johnson's motion for leave to file a Second

Amended Complaint, finding that it would require a lengthy extension of discovery, and denied his motion for summary judgment because it incorrectly relied on Michigan law. The district court also denied the motion for summary judgment filed by Ventra Group and Ventratech, granting Johnson an extension of time in which to file a response. Additional responses were subsequently filed by both parties. Finally, on August 31, 1995, the district court granted summary judgment in favor of Ventra Group and Ventratech on all of Johnson's claims.

Johnson appealed the district court's denial of his motion for leave to file a Second Amended Complaint, the denial of his motion for summary judgment, and the grant of summary judgment in favor of Ventra Group and Ventratech. On August 13, 1997, a panel of this court reversed the district court's denial of Johnson's motion for leave to amend his complaint, stating that "the district court abused its discretion by not weighing the cause for delay and by then refusing to allow [Johnson] to amend his complaint." The panel remanded the case to the district court to allow Johnson leave to amend his complaint, expressly not reaching any of the other issues raised in Johnson's appeal. *See Johnson v. Ventra Group, Inc.*, No. 96–1463, 1997 WL 468332, at *3, n. 3 (6th Cir. August 13, 1997).

On October 1, 1997 Johnson filed his Second Amended Complaint, alleging the following causes of action: (1) enforcement of a foreign judgment based on successor liability, (2) breach of contract and fraud, (3) intentional interference with contractual, business, or financial relations, (4) fraudulent conveyance, (5) oppression or unfair conduct, (6) unjust enrichment, and (7) violation of the Michigan Sales Representative Statute. Ventra Group and Ventratech moved for summary judgment as to all of Johnson's claims. Johnson sought summary judgment only as to his causes of action regarding the enforcement of a foreign judgment and his unjust enrichment

theory. On March 6, 1998, the district court again denied Johnson's motion for partial summary judgment and granted summary judgment in favor of Ventra Group and Ventratech. Three days later, the district court also denied Johnson's request for discovery-based sanctions as moot.

Johnson has appealed (1) the district court's grant of the motion for a determination of foreign law entered on June 7, 1995, (2) the district court's grant of summary judgment in favor of Ventra Group and Ventratech entered on August 31, 1995, (3) the district court's order denying Johnson's motion for summary judgment and granting summary judgment in favor of Ventra Group and Ventratech entered March 6, 1998, and (4) the district court's denial of Johnson's request for sanctions.

## II. ANALYSIS

### A. Choice of law

■ A federal court's determination of foreign law is "treated as a ruling on a question of law." FED. R. CIV. P. 44.1. Accordingly, the district court's determination that Ontario law applies and its interpretation of that law is subject to de novo review. *See Tschira v. Willingham*, 135 F.3d 1077, 1082–83 (6th Cir.1998).

■ The parties dispute whether the instant action is governed by Michigan law or Ontario law. To resolve this dispute, a federal court whose jurisdiction is based on diversity of citizenship must apply the conflict of law rules of the forum state. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 490, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Because Johnson filed suit in a federal district court in Michigan, we must look to Michigan's conflict of law rules to determine whether Michigan law or Ontario law governs this dispute.

■ Michigan has adopted the approach set forth in the Restatement (Second) of Conflict of Laws. *See Banek Inc. v. Yogurt Ventures*, U.S.A., Inc., 6 F.3d 357, 361

(6th Cir.1993). According to this approach, a contractual choice of law provision will be binding unless either:

(a) he chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or

(b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of [§ ] 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187(2) (1988). In the instant action, Johnson's sales representative contract states that "[t]his agreement shall be interpreted and governed by the laws of the Province of Ontario." We now turn to Johnson's challenges to the validity of this contractual choice of law provision and whether either of the two exceptions set forth in § 187(2) of the Restatement apply.

### 1. The validity of the contractual choice of law provision

■ Johnson first argues that the contractual choice of law provision should not be considered at all. He asserts that because neither Ventra Group nor Ventratech were parties to the contract, they cannot seek the enforcement of the contract's terms. Johnson claims that "it would be fundamentally unfair to allow the defendant[s] to enforce the choice of law provision without being bound by the obligations of the contract." We find this argument unpersuasive, however, because Johnson would have no basis for any claim whatsoever if the contract did not exist.

Johnson and his attorney specifically negotiated the forum selection clause, and we are hesitant to "void the choice of law provision because that would mean [Johnson] would be getting more than [he] bargained for." *Banek*, 6 F.3d at 362 n. 2. Moreover, "Michigan has an interest in assuring that its citizens receive the contractual benefits for which they negotiated...." *Meijer Inc. v. General Star Indem. Co.*, 826 F.Supp. 241, 246 (W.D.Mich. 1993). We find no basis to allow Johnson to pick and choose which terms of the contract he wishes to enforce and which he wishes to ignore. Either all of its terms should be applicable or none should be. We therefore hold that Johnson is bound by the choice of law provision negotiated for and agreed to in his contract.

The fact that Ventra Group and Ventratech are not similarly bound does not strike us as "fundamentally unfair" because, unlike Johnson, they were not parties to the contract. Rather, the extent to which these two corporations are bound by the terms of the contract between Johnson and Manutec is determined by the law of successor liability. *See* Part B.1. below.

■ Johnson also asserts that his cause of action for the enforcement of a foreign judgment is governed by the Uniform Foreign Money Judgment Recognition Act. *See* MICH. COMP. LAWS § 691.1151–1159 (1987). His claim, however, is not a simple action for the enforcement of a foreign judgment, because the judgment Johnson seeks to enforce was not obtained against either of the named defendants in the instant case. Rather, this claim primarily raises issues of successor liability. The Uniform Foreign Money Judgment Recognition Act is therefore inapplicable.

### 2. Neither of the two exceptions set forth in Banek apply

■ Having determined that Michigan's contractual choice of law rule applies to the present case, we turn to the question of whether either of the exceptions stated in the Restatement applies. The first exception clearly does not apply because the chosen forum, Ontario, has a substantial relationship to Manutec, Johnson, and the transactions between them. Specifically,

Manutec was incorporated and operated in Ontario, Johnson's prior lawsuit against Manutec was filed and concluded in Ontario, both Ventra Group and Ventratech are Ontario corporations, certain of Manutec's assets were acquired by them in Ontario, and the negotiations with Manutec's receivers occurred in Ontario.

■ Whether the second exception applies, however, is hotly disputed. Johnson first asserts that Ontario has no law on the issue of successor liability and that the district court therefore had to "predict" what an Ontario court would do in such a case. We disagree. Ontario's law on successor liability, although different than Michigan law, clearly exists. *Waldron v. Armstrong Rubber Co.*, 64 Mich.App. 626, 236 N.W.2d 722 (1975), cited by Johnson, is distinguishable in that the court in *Waldron* held that there was no Indiana law on the disputed issue before it. In the present case, however, the Ontario courts have spoken on the issue of successor liability.

■ Johnson also argues that the application of Ontario law is contrary to Michigan's fundamental policy in favor of successor liability. The fact, however, that a different result might be achieved if the law of the chosen forum is applied does not suffice to show that the foreign law is repugnant to a fundamental policy of the forum state. *See Banek*, 6 F.3d at 363. If the situation were otherwise, and foreign law could automatically be ignored whenever it differed from the law of the forum state, then the entire body of law relating to conflicts would be rendered meaningless.

The cases cited by Johnson in support of his assertion that forum law is frequently applied to questions involving successor liability are either distinguishable or not on point. *See, e.g., Travis v. Harris Corp.*, 565 F.2d 443, 446 (7th Cir.1977) (holding in a successor liability case that "questions of traditional tort law unrelated to the contract" were properly governed under fo-

rum law); *Mahne v. Ford Motor Co.*, 900 F.2d 83, 85–86 (6th Cir.1990) (applying a different analysis in a product liability case involving neither successor liability nor a contractual choice of law provision).

We find more persuasive the case of *Moses v. Business Card Express, Inc.*, 929 F.2d 1131 (6th Cir.1991), where an Alabama franchisee brought suit in a federal court in Alabama against a Michigan franchisor. The case was then transferred to Michigan and Michigan law was applied pursuant to the choice of law clause contained in the franchise agreement. One of the issues on appeal was whether it would offend the public policy interests of Alabama, the original forum state, not to allow the Alabama franchisee to recover punitive damages for fraud or misrepresentation. Alabama law allows such a recovery, whereas Michigan law does not. The court held that "this was the state of the law when the plaintiffs entered into the contract" and "[t]hey cite no case in which it has been held that a state's dominating public interest is violated by requiring its citizens and residents to try a lawsuit in another jurisdiction with a different rule on punitive damages where the parties have agreed that the other state's substantive law is controlling." *Id.* at 1139. In the instant case, Johnson expressly agreed to have Ontario's law control his contract and the state of Ontario law on the issue of successor liability has not changed since the time of the agreement.

Johnson, citing the Michigan Sales Representative Statute, also argues that Michigan has "a long common law history of protecting procuring agents and a recent statutory history of protecting sales representatives by statutory mandate." This statute imposes sanctions on any "principal" who fails to make timely commission payments to a terminated "sales representative." *See* MICH. COMP. LAWS § 600.2961 (1996). Johnson, however, has already received legal redress from his "principal" by obtaining a default judgment against Manutec. In the present case, he is trying

to enforce that judgment against separate legal entities on the theory of successor liability. Because this theory involves an entirely different body of law that is not covered by the Michigan Sales Representative Statute, the statute is not relevant to this issue.

We thus conclude that the contractual choice of law provision governs and that neither of the two exceptions set forth in the Restatement applies.

### 3. The scope of the choice of law provision

■ The next question is whether the choice of law provision governs all of Johnson's claims. Johnson's contractually based claims are clearly covered. In addition, this court has held that a similar provision governed claims for fraud and misrepresentation in *Moses*, 929 F.2d at 1139. Moreover, Michigan's choice of law rules governing contract actions have also been applied to the quasi-contractual claim of unjust enrichment. *See Aetna Casualty & Sur. Co. v. Dow Chem. Co.*, 883 F.Supp. 1101, 1104–10 (E.D.Mich.1995). The choice of law provision set forth in the contract is therefore broad enough to govern all of Johnson's claims.

### 4. Alternative choice of law approaches also lead to Ontario law

■ Because the choice of law provision contained in Johnson's contract is valid and binding, the district court properly determined that Ontario law governs the instant action. Moreover, we would find Ontario law applicable even absent the contractual choice of law provision. The common law choice of law rule followed by the Michigan courts is the traditional "law of the place of contracting," according to which the court is to apply the law of the place where the contract was made. *See Wells v. 10–X Mfg. Co.*, 609 F.2d 248, 253 (6th Cir.1979). Because the contract was signed in Ontario, the Michigan common law choice of law rule would apply Ontario law.

■ As noted by Johnson, however, the Michigan Supreme Court has recently stated that although it has not abandoned the traditional "law of the place of contracting" rule, it will apply the policy-centered analysis approach set forth in § 188 of the Restatement (Second) of Conflict of Laws in appropriate cases. *See Chrysler Corp. v. Skyline Indus. Serv., Inc.*, 448 Mich. 113, 528 N.W.2d 698, 703 n. 28 (1995). In such cases, courts should apply the law of the state that has the most "significant relationship to the transaction and parties[:]"

> The contacts to be taken into account . . . to determine the law applicable to an issue include: (a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties.

Restatement (Second) of Conflict of Laws § 188(2) (1971).

Although Michigan has substantial ties to the instant transaction because it is Johnson's place of residence and the place where a major part of the performance occurred, Ontario has the more significant relationship because Manutec as well as the present defendants are Ontario corporations, the contract was negotiated and signed in Ontario, and the alleged breach occurred in Ontario. Accordingly, Ontario law would govern under a § 188 analysis.

■ We further note that § 188 only applies to cases where the parties have not contractually agreed to a choice of law provision. See Restatement (Second) of Conflict of Laws § 188 (1971) (titled "Law Governing In Absence of Effective Choice by the Parties"). Because Johnson agreed to a contractual choice of law provision in the instant case, this section does not apply.

Therefore, whether this court applies the choice of law provision contained in the contract, the traditional Michigan choice of law rule, or § 188 of the Restatement, Ontario law governs Johnson's claims.

## B. Grant of summary judgment in favor of Ventra Group and Ventratech

We review *de novo* the district court's grant of summary judgment. *See Smith v. Ameritech,* 129 F.3d 857, 863 (6th Cir. 1997). Summary judgment is appropriate when there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The judge is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A genuine issue for trial exists when there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252, 106 S.Ct. 2505.

### 1. Count I—Enforcement of a foreign judgment

The district court granted summary judgment in favor of Ventra Group and Ventratech and denied Johnson's motion for summary judgment as to this claim, extensively relying on its prior grant of summary judgment with regard to Johnson's First Amended Complaint. Despite Johnson's arguments to the contrary, we find that the allegations contained in the two versions of his complaint are quite similar. In his First Amended Complaint, Johnson alleged that Ventra Group and Ventratech, as the corporate successors to Manutec, are liable for the Canadian judg-ment in favor of Johnson. Similarly, his Second Amended Complaint states that Manutec was the mere instrumentality and alter ego of Ventra Manufacturing, and that following Ventra Group's purchase of Ventra Manufacturing's stock, Ventra Group assumed the liabilities for which Ventra Manufacturing was liable. Although worded differently, Johnson's claim is still essentially an issue of successor liability, regardless of whether the alleged liability is based on the purchase of stock or the acquisition of assets.

The district court correctly set forth the status of successor liability under Ontario law in its grant of summary judgment. In determining the substantive law of Ontario, the court relied on the expert opinion of Colin F. Dodd, an Ontario solicitor hired by Ventra Group and Ventratech for the purposes of providing advice and opinions on Ontario law. According to Rule 44.1 of the Federal Rules of Civil Procedure, "[t]he court, in determining foreign law, may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence."

Based on Dodd's testimony, the court opined that "under Ontario law, successor liability does not follow the purchase of assets; an assumption of liability may be conveyed only by an express transfer of the obligation at the time of sale." Moreover, the court stated that the "mere continuation" theory argued by Johnson is not recognized by the courts of Ontario. This conclusion was reinforced by Johnson's own expert witness, who stated that "Canadian law has not yet developed to the point where specific application has been made of the 'mere continuation' doctrine." Because Johnson failed to establish any express assumption of liability at the time of Ventra Group's or Ventratech's purchase of Ventra Manufacturing's assets, the district court properly held that neither Ventra Group nor Ventratech was liable for the judgment against Manutec.

Johnson contests the district court's use and interpretation of Ontario law. First, he argues that Ontario law and Michigan law are substantially similar. As stated above, however, Ontario law does not recognize successor liability unless there is evidence of an express transfer of the obligation at the time of sale. On the other hand, Michigan law recognizes successor liability in the following situations: (1) where the purchasing corporation expressly or impliedly agrees to assume the selling corporation's liabilities, (2) where the transaction amounts to a consolidation or merger of the two corporations, (3) where the purchasing corporation is the mere continuation of the selling corporation, or (4) where the transaction is entered into fraudulently in order to escape liability for the obligations of the selling corporation. *See City Management Corp. v. U.S. Chem. Co.*, 43 F.3d 244, 251 (6th Cir.1994).

In support of his claim, Johnson relies on the case of *Suncor Inc. v. Canadian Wire & Cable Ltd.* (1993) 15 Carswell's Practice Cases (3d) 201, 211, a decision from the Province of Alberta, Canada in which the court stated that "there exists a real possibility that courts in Canada will adopt the reasoning of the successor liability cases in the U.S." He also cites to the opinion of Professor Farrar contained in the Canadian Business Law Journal in which Farrar states that "Canadian law on successor liability is 'in a state of flux' and remains an open question." *See* CAN. BUS. L.J. 474, 479 (1990). The *Suncor* court, however, did not actually adopt the United States law of successor liability and clearly acknowledged that Canadian law had not yet developed to that point. And even assuming the accuracy of Professor Farrar's comment that the status of the law in Canada is "in a state of flux," we find no basis to disturb the finding of the district court that Ontario's current law on successor liability was correctly stated by Dodd and is dissimilar to Michigan's law.

Furthermore, the cases cited by Johnson in support of his assertion that Ontario courts recognize successor liability in the absence of an express assumption of the obligation are easily distinguishable. In *Trustee Co. of Winnipeg v. Manitoba Bridge and Iron Works, Ltd.* (1921) 1 W.W.R. 178, the court granted a motion to add a successor corporation as a party. The court, however, did not make any determination as to the substantive issues facing the parties and, according to Dodd, its holding "no longer reflects the current application of the common law in Ontario." In *Amalgamated Jewelry v. Marvel Jewellery Ltd.* (Ont. Labour Bd.1975), the Ontario Labour Board held that the successor liability doctrine prohibits corporations from circumventing their predecessor's labor obligations. That case, however, involved a specific statutory exception contained in the Ontario Labour Relations Act that imposes successor liability in a collective bargaining context. Neither case, therefore, is applicable to the instant appeal.

Johnson also asserts that Ventra Group's assumption of liability is evidenced by communications that he received on Ventra Group's stationary, his dealings with a Ventra Group officer, and various financial statements. Even if these instances in fact reveal an *implied* assumption of liability, Dodd testified that a party has to show that a successor corporation *expressly* agreed to assume liability for the predecessor's obligations in order to succeed on this claim under Ontario law. Johnson is unable to make this showing.

Johnson further argues that Ontario common law prohibits a company from conveying its assets to another company in order to avoid a judgment. *See Lockharts Ltd. v. Excalibur Holdings Ltd.* (1987) 83 N.S.R.2d 181 (holding that the plaintiff could file suit against a successor investment company because it was used as a "puppet to defraud the plaintiff and defeat its judgment"). The court in *Lockharts* explained that although the

fundamental principle that companies are considered separate entities from their shareholders is "alive and well" in Canada, the corporate veil may be lifted if the corporate status is being used for "fraudulent or improper purposes." *Id.* at 186.

The facts in the instant case, however, reflect (1) that Manutec had no control over its assets by the time of their sale, (2) that its secured creditors had a priority lien in these assets and appointed independent receivers to take possession of the assets and sell them, (3) that the proceeds were then applied to satisfy Manutec's debts to the secured creditors, and (4) that there was nothing remaining for Johnson or any of the other unsecured creditors. Contrary to Johnson's allegations, these undisputed facts do not indicate that Manutec's assets were conveyed for fraudulent or improper purposes.

 Finally, Johnson contends that Ventra Manufacturing "amalgamated" with Manutec, thereby legally assuming all of its debts, and that Ventra Group subsequently amalgamated with Ventra Manufacturing, thereby assuming all of its debts. Under Ontario law, when two companies amalgamate, they continue as one corporation and each takes on the liabilities of the other. *See* Ont. Bus. Corp. Act, R.S.O., ch.B. 16, § 179(b) (1990) (Can.) ("Upon the articles of amalgamation becoming effective, the amalgamated corporation ... is subject to all liabilities, including civil, criminal and quasi-criminal, and all contracts, disabilities and debts of each of the amalgamating corporations"). This is essentially the status of a merger under Michigan law. *See* MICH. COMP. LAWS § 450.1724 (1990).

Although there appears to have been an amalgamation between Ventra Manufacturing and Ventra Group, there was never an amalgamation between Ventra Manufacturing and Manutec. The record reflects that Ventra Manufacturing purchased 100% of Manutec's stock, thereby becoming its parent company. The two corporations, however, remained separate

entities. Manutec maintained a separate board of directors and officers and continued the operation of its plants. An amalgamation under Ontario law, therefore, did not occur.

For all of these reasons, we affirm the district court's grant of summary judgment in favor of Ventra Group and Ventratech, and its denial of Johnson's motion for partial summary judgment as to this count.

### 2. Count II—Breach of contract and fraud

Count II of the Second Amended Complaint asserts that prior to April of 1998, Ken Nichols, the director and president of Ventra Manufacturing, orally promised that Johnson's contract with Manutec would be "honored and assumed" by Ventra Manufacturing to "induce Plaintiff to continue performing his contract for Manutec." Johnson asserts that in reliance upon this promise, he persuaded Chrysler to "accept Ventra Manufacturing as a successor to Manutec." The district court granted summary judgment in favor of the defendants on this claim, holding that the claim was barred by the statute of frauds. It further held that even if it was not so barred, Johnson had failed to establish the requisite elements of this claim.

 According to the Ontario statute of frauds in effect at the time of Nichols's alleged promise to Johnson, a contract that could not by its terms be performed within one year is void unless it is in writing. See Statute of Frauds, R.S.O., ch.19, § 4 (1990) ("No action shall be brought ... upon any agreement that is not to be performed within the space of one year from the making thereof, unless the agreement upon which the action is brought ... is in writing and signed by the party to be charged therewith...."). To the extent that Nichols's alleged agreement required Ventra Manufacturing to honor and assume Johnson's contract with Manutec, it was an agreement that could not be performed within one year because the term

of Johnson's Manutec contract was three years. The district court therefore properly held that Johnson's claim was barred by the statute of frauds.

The Ontario statute of frauds has since been amended. *See* R.S.O., ch .27, § 55 (1994). The new version, enacted on December 9, 1994, no longer requires that an agreement that is not to be performed within one year be in writing. *See* Statute of Frauds, R.S.O., ch. 19, § 4 (1994). According to Ontario law, however, "statutes are not to be construed as having retrospective [retroactive] operation unless such a construction is expressly or by necessary implication required by the language of the Act." *See* DREIDGER ON THE CONSTRUCTION OF STATUTES 512 (3rd ed.1994) (internal quotation marks omitted) (alteration in original). Because there is no provision for the retrospective application of the amended statute of frauds, the district court properly applied the statute as it existed at the time of Nichols's alleged oral promise.

Johnson seeks to avoid the application of the statute of frauds by arguing that the part performance and estoppel exceptions to the statute apply in the present case. In order for the part performance exception to be applicable, however, a plaintiff must satisfy the following conditions:

> First, the acts of part performance are referable to a contract such as that alleged and no other; second, they are such as to render it a fraud to take advantage of the contract not being in writing; third, the contract to which they refer is in its own nature enforceable; and fourth, there is excellent parol evidence of the contract, which is let in by the acts of part performance.

*Clubb v. Clubb* (1955) 4 D.L.R. 654, 660. The estoppel exception, on the other hand, requires a plaintiff to establish conduct on the part of the defendant that is referable to the oral contract and to prove that the plaintiff relied on the defendant's statement to his detriment. *See Edwards v. Harris–Intertype* (Canada) Ltd. (1984) 9 D.L.R.4th 319.

Johnson cannot meet any of the above requirements because he was already bound by his contract with Manutec to solicit business from Chrysler and others. His "performance" in that regard was therefore not solely referable to the alleged oral agreement. For the same reason, Johnson failed to establish an action for fraudulent inducement. To establish such an action, a plaintiff must show, among other things, that he acted in reliance upon the defendant's representation. *See McCallum v. Proctor* (1914) 6 O.W.N. 556. Johnson did not act in reliance upon Nichols's representation because he was already obligated to act under his contract with Manutec.

For these reasons, the district court properly granted summary judgment in favor of Ventra Group and Ventratech on this claim.

*3. Count III—Intentional interference*

Count III of Johnson's Second Amended Complaint asserts a claim for intentional interference with contractual, business, or financial relations. Specifically, he asserts that Ventra Manufacturing intentionally interfered with and purposefully destroyed his relationship with Chrysler and others, so that Ventra Manufacturing could take over and benefit from the goodwill developed by Johnson. The district court granted summary judgment in favor of Ventra Group and Ventratech on this claim, stating that the claim was barred by the Michigan statute of limitations, and that even if it was not barred, Johnson had failed to establish the requisite elements of such a claim.

*a. Johnson's claim is barred by the statute of limitations*

A federal court whose jurisdiction is based upon diversity of citizenship must apply the choice of law rules of the forum state. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 490, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Like many other

jurisdictions, Michigan has enacted a borrowing statute which provides that a cause of action that accrues outside of the state in favor of a Michigan resident is governed by Michigan's statute of limitations:

> An action based upon a cause of action accruing without this state shall not be commenced after the expiration of the statute of limitations of either this state or the place without this state where the cause of action accrued, except that where the cause of action accrued in favor of a resident of this state the statute of limitations of this state shall apply.

MICH. COMP. LAWS § 600.5861 (1987).

■ Johnson argues that applying Ontario law to the substance of his case and Michigan's statute of limitations creates "fundamental unfairness and inconsistency." The Supreme Court, however, has held that the application of a borrowing statute, such as the one in Michigan, is constitutional, even if the action itself is governed by the substantive law of another jurisdiction. *See Sun Oil Co. v. Wortman,* 486 U.S. 717, 722, 108 S.Ct. 2117, 100 L.Ed.2d 743 (1988) ("This Court has long and repeatedly held that the Constitution does not bar application of the forum State's statute of limitations to claims that in their substance are and must be governed by the law of a different State.").

■ According to the laws of Michigan, claims for intentional interference are governed by a three-year statute of limitations. *See* MICH. COMP. LAWS § 600.5805(8) (1987); *DXS, Inc. v. Siemens Med. Sys. Inc.,* 100 F.3d 462, 471 (6th Cir.1996). This limitations period began to run at the time of Johnson's termination on April 7, 1988. Because Johnson did not file suit against Ventra Group and Ventratech until January 13, 1994, his claim is barred by the Michigan statute of limitations.

■ Even if the borrowing statute did not apply in the present case, Michigan's statute of limitations would still govern. Under Michigan's common law choice of law rule, statutes of limitation are considered procedural and are governed by the law of the forum. *See Isley v. Capuchin Province,* 878 F.Supp. 1021, 1025 (E.D.Mich.1995) ("Under Michigan conflicts law, statutes of limitations are deemed to be procedural, rather than substantive, and are to be governed by the law of the forum."). In response, Johnson relies on two older cases based on Michigan law holding that statutes of limitation are in fact substantive rather than procedural. *See Waldron v. Armstrong Rubber Co.,* 393 Mich. 760, 223 N.W.2d 295, 296 (1974); *Korzetz v. Amsted Indus. Inc.,* 472 F.Supp. 136, 140–41 (E.D.Mich.1979). We decline to follow these two cases, however, in light of the fact that subsequent Michigan decisions have held that statutes of limitation are procedural and have applied the law of the forum state. *See, e.g., Sutherland v. Kennington Truck Serv., Ltd.,* 454 Mich. 274, 562 N.W.2d 466, 477 (1997) ("Michigan classifies statutes of limitation as procedural."); *Isley,* 878 F.Supp. at 1025.

### b. Johnson's claim is insufficient

■ Even if his claim were not barred by the statute of limitations, Johnson would still not succeed on the merits. In order to prevail on a claim of intentional interference with contractual, business, or financial relations under Ontario law, a plaintiff must prove that: (1) a contract existed and was breached, (2) the defendant knew or had means of knowing its terms, (3) the defendant intended to procure a breach of the contract, and (4) it was the defendant's conduct that caused the breach. *See Atcheson v. College of Physicians & Surgeons* (1994) 21 C.C.L.T.2d 166.

Johnson is unable to make this showing because he had no contractual relationship with Chrysler, nor did Chrysler make any payments to him. Rather, his contract and source of payment was with Manutec. There was therefore no contract or relationship between Johnson and Chrysler

with which Ventra Manufacturing could have unlawfully interfered.

Furthermore, any alleged interference by Ventra Manufacturing did not cause Chrysler to cease its dealings with Johnson. To the extent that his dealings were discontinued, it was because his contract with Manutec had been terminated. The alleged interference was thus "indirect," which under Ontario law requires proof of intrinsically "unlawful means." *See id.* No such intrinsically unlawful means are alleged in the present case.

Johnson also argues that the district court's dismissal of his claim is directly contrary to *Fraser v. Board of Trustees of Central United Church* (1982) 38 O.R.2d 97 and *Toronto–Dominion Bank v. Leigh Instruments Ltd.* (1992) 40 C.C.E.L. 262. We disagree. The court in *Fraser* held that the contractor had satisfied all of the elements establishing that the defendant had unlawfully interfered with his construction contract. In the instant case, Johnson is unable to make an equivalent showing. *Toronto–Dominion Bank*, which held that a bank satisfactorily stated a claim against various companies and their officers, directors, and employees for negligent misrepresentation, is also unhelpful to Johnson's position because it did not consider a claim of intentional interference with contractual, business, or financial relations.

For all of the above reasons, we hold that the district court properly granted summary judgment in favor of Ventra Group and Ventratech as to the claim of intentional interference.

### 4. Count IV—Fraudulent conveyance

■ Count IV of the Second Amended Complaint alleges that the officers of Ventra Manufacturing conspired to have Manutec's assets transferred to Ventra Group and Ventratech in order to impair Johnson's ability to recover on his Canadian judgment. But a cause of action based on a fraudulent conveyance cannot succeed under Ontario law if valuable consideration is received, unless the plaintiff can show that the debtor had an actual intention to defraud him. *See* Fraudulent Conveyances Act, R.S.O., ch.F–29 (1990). A plaintiff in such a case must also establish that both the debtor and transferee had an "intent to defeat, hinder, delay or defraud creditors." *See* FRANK BENNETT, BENNETT ON CREDITORS' AND DEBTORS' RIGHTS AND REMEDIES 123 (4th ed.1994).

The district court properly granted summary judgment on this claim in favor of Ventra Group and Ventratech because Johnson did not allege that either Manutec or its receivers had any intent to defraud the creditors. In fact, Ventra Group and Ventratech attached several affidavits to their motion for summary judgment establishing the propriety of the receivers' conduct with respect to the sale of Manutec's assets.

Johnson argues on appeal that Ventra Group and Ventratech received all of the intangibles and goodwill of Manutec without paying any consideration. Johnson, however, presented no proof that Manutec, an insolvent company, had any such assets of value. We consequently find this claim to be speculative in the absence of proof to the contrary.

For all of these reasons, we affirm the district court's grant of summary judgment in favor of Ventra Group and Ventratech as to the fraudulent conveyance claim.

### 5. Count V—Oppression or unfair conduct

Count V of the Second Amended Complaint asserts a claim for oppression or unfair conduct under § 248 of the Ontario Business Corporations Act, R.S.O., ch.16, § 248 (1990). Specifically, Johnson alleges that Ventra Group and Ventratech acted in an "oppressive or unfairly prejudicial" way that disregarded his interest as a creditor.

■ Under the Act, however, a creditor is not expressly included as a "complainant." *See* Ont. Bus. Corp. Act,

R.S.O., ch.16, § 245 (1990); *see also Royal Trust Corp. v. Hordo* (1993) O.J. 1560 ("A creditor is not specifically defined as a 'complainant' under the CBCA and therefore creditors generally are not 'complainants' of right."). No automatic right to apply for relief exists absent a determination by the court that the applicant is a proper person to apply for relief under the Act. *See* Ont. Bus. Corp. Act., R.S.O., ch.16, § 245(c) (1990). The district court, finding that Johnson offered no basis for the court to hold that he is a "complainant" for the purpose of stating a claim of oppression or unfair conduct, properly granted summary judgment in favor of Ventra Group and Ventratech.

■ Even assuming that Johnson could be considered a "complainant" under the Act, the purported creditor must be (1) a creditor of the corporation whose conduct is challenged, and (2) a creditor of the corporation at the time of the oppressive action of which he complains. *See* Ont. Bus. Corp. Act, R.S.O., ch.16, § 248 (1990); *Trillium Computer Resources Inc. v. Taiwan Connection Inc.* (1992) 10 O.R.3d 249 (stating that a person who becomes a creditor as a result of the oppressive action complained of is not a proper applicant for relief under the statute). In the instant case, Johnson was never a creditor of Ventra Group or Ventratech and, even if he were considered a creditor, he was not one at the time of the alleged oppressive action. Rather, he would have become a creditor only as a result of the allegedly oppressive action.

For these reasons, we affirm the district court's grant of summary judgment in favor of Ventra Group and Ventratech as to this claim.

### 6. Count VI—Unjust enrichment

■ Count VI of the Second Amended Complaint asserts a claim for unjust enrichment. In order to prove a claim of unjust enrichment under Ontario law, a plaintiff must establish three elements: (1) an unjust enrichment, (2) a corresponding

deprivation, and (3) the absence of any juristic reason for enrichment. *See Rathwell v. Rathwell* (1978) 83 D.L.R.3d 289. The district court correctly determined that Johnson had failed to establish either unjust enrichment on the part of the defendants or any corresponding deprivation as to himself.

As to the alleged unjust enrichment, the asset purchase did not occur until two and one half years after the termination of Johnson's contract with Manutec. According to Dodd, a party cannot be deemed to have been unjustly enriched when a period of this duration passes between the alleged labor and the purported benefit. Furthermore, as to the alleged corresponding deprivation, the asset purchase occurred beyond the two year notice period in Johnson's contract with Manutec. Any commissions would therefore have lapsed before the asset purchase in any event.

Johnson raises two arguments on appeal, one relating to the existence of a "question of fact" and the other relating to the district court's reliance on its reasoning as set forth in its prior grant of summary judgment. We find neither argument persuasive. First, although Johnson correctly notes that his expert asserted that "questions of fact existed" relative to his claim of unjust enrichment, his expert opined that only the third element—the existence of a juristic reason—was a question of fact. The expert apparently did not disagree with Dodd's analysis that an unjust enrichment and a corresponding deprivation were lacking. Because Johnson failed to satisfy these first two elements, however, it is irrelevant whether the "juristic reason" element is a question of fact.

Second, Johnson's Second Amended Complaint alleged essentially the same unjust enrichment claim as asserted in his First Amended Complaint, the only difference being the additional allegation that the defendants engaged in "wrongful and improper conduct." Because this addition-

al allegation does not sufficiently alter the claim from that asserted in his First Amended Complaint, the district court's reliance on its reasoning as set forth in its prior grant of summary judgment is not clearly erroneous.

For all of these reasons, we affirm the district court's grant of summary judgment in favor of Ventra Group and Ventratech as to this claim.

### 7. Count VII—Violation of Michigan Sales Representative Statute

Count VII of Johnson's Second Amended Complaint asserts that Ventra Group and Ventratech, through Ventra Manufacturing, violated the Michigan Sales Representative Statute. *See* MICH. COMP. LAWS § 600.2961 (1996). Johnson alleges that the defendants "caused or directed [him] to be terminated and prohibited [him] from receiving the commissions that were due at the time of his termination and prohibited [him] from receiving those commissions that were due within 45 days after his termination."

Because Ontario law governs the instant case, the Michigan statute is inapplicable. Moreover, as the district court correctly noted, the Michigan statute was enacted four years after Johnson was terminated and nearly two years after he obtained his judgment against Manutec. Ventra Group and Ventratech could not possibly have complied with a statute that did not exist at the time of Johnson's termination. Although the Michigan cases cited by Johnson on appeal support the retroactive application of remedial statutes, none of them hold that the Michigan Sales Representative Statute is such a statute.

For all of these reasons, the district court properly granted summary judgment in favor of Ventra Group and Ventratech on this claim.

### C. Denial of Johnson's motion for sanctions

On March 9, 1998, the district court denied Johnson's motion for Rule 37 discovery sanctions, stating that such a request was moot in light of the court's prior grant of summary judgment in favor of Ventra Group and Ventratech. On appeal, Johnson argues that he should have been granted a hearing on this issue.

■■ The district court erred in denying Johnson's motion on the basis that it was moot, because the court could have considered the motion for sanctions despite ruling on the merits in favor of Ventra Group and Ventratech. *See, e.g., BankAtlantic v. Blythe Eastman Paine Webber, Inc.*, 12 F.3d 1045, 1046 (11th Cir.1994) (affirming the district court's imposition of sanctions against the defendant despite the court's judgment in the defendant's favor). We need not decide this issue, however, because a district court's decision to deny a party's motion for sanctions cannot be reversed absent an abuse of discretion. *See Coleman v. American Red Cross*, 979 F.2d 1135, 1140 (6th Cir.1992).

■ Specifically, Johnson requested, as part of a notice to take the deposition of various officers of Ventra Manufacturing, all documents in which "the John Johnson contract or the relationship between John Johnson, Manutec, Ventra Group and/or Ventratech were in any way discussed or mentioned." Johnson claims that Ventra Group and Ventratech concealed these documents rather than complying with his request. Ventra Group and Ventratech did not in fact produce these documents, objecting to the request on the basis of its being vague, overly broad, and unduly burdensome. These documents, however, were previously provided by Ventra Manufacturing to Johnson in connection with the prior Canadian proceeding. They were at all times in the file of Johnson's prior counsel and presumably on file with the Ontario court. Moreover, Johnson never moved to strike the defendants' objections to this request or to compel the production of the documents. Accordingly, the dis-

trict court's denial of Johnson's motion for sanctions was not an abuse of discretion.

### D. Johnson's request for reassignment

Finally, Johnson requests that this court exercise its authority under 28 U.S.C. § 2106 to have this case reassigned to another district court judge upon remand. Because we are affirming the district court's grant of summary judgment in favor of Ventra Group and Ventratech, this request is moot.

## III. CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.